**Johnny DAVENPORT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56013.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 15, 1978.

Rehearing Denied Dec. 20, 1978.

John Langford, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Douglas Gelo, Asst. Dist. Atty., El Paso, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from an order revoking probation. On January 19, 1971, appellant pled guilty to the offense of possession of a narcotic drug and his punishment was assessed at six years in the Texas Department of Corrections. Imposition of sentence was suspended and probation was granted, subject to certain terms and conditions. Among the conditions of appellant's probation were that he commit no offense against the law, that he avoid injurious or vicious habits, and that he drink no alcoholic beverages and enter no place where such beverages are sold.

On September 3, 1976, the State filed a motion to revoke adult probation alleging:

"[O]n the thirteenth day of August, 1976, in the County of El Paso and State of Texas, the said defendant, Johnny Davenport, did then and there unlawfully, intentionally and knowingly drive and operate a motor vehicle, to-wit: 1970 Ford Pinto upon a public road and highway in said State and County, while the said Johnny Davenport was intoxicated and under the influence of intoxicating liquor."

A hearing was held on October 21, 1976, and the trial court denied the State's motion to revoke. Subsequent thereto, on November 1, 1976, the State filed another motion to revoke adult probation alleging as grounds the same factual basis that was alleged in the September 3 motion.[1]

On December 22, 1976, after having heard the second motion, the court found the State's allegations true and revoked appellant's probation.

### Double Jeopardy Issue

The first contention presented by the appellant is that Article I, Sec. 14, of

---

1. "On the 13th day of August, 1976, in the County of El Paso and State of Texas, the said defendant, Johnny Davenport, did then and there unlawfully, drive an automobile, to-wit: a Ford Pinto upon a street within the limits of an incorporated city, to-wit: El Paso, Texas, while the said Johnny Davenport was intoxicated."

the Texas Constitution, and the United States Constitution's Fifth Amendment guarantee against double jeopardy applicable to the states through the Due Process Clause of the Fourteenth Amendment prohibit the State from twice subjecting the appellant to a revocation of probation proceeding based upon the same alleged probationary violation and fact situation.[2]

At a revocation of probation proceeding, a defendant need not be afforded the full range of constitutional and statutory protections available at a criminal trial. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). At such a proceeding, guilt or innocence is not at issue, and the trial court is not concerned with determining the defendant's original criminal culpability. "The question at a revocation hearing is whether the appellant broke the contract he made with the court after the determination of his guilt." *Kelly v. State,* Tex.Cr.App., 483 S.W.2d 467, 469. Also of significance is the fact that ". . . the result of such a hearing to revoke is not a *conviction* but a finding upon which the trial court might exercise its discretion by revoking or continuing probation." *Hill v. State,* Tex.Cr.App., 480 S.W.2d 200, cert. denied, 409 U.S. 1078, 93 S.Ct. 694, 34 L.Ed.2d 667 (emphasis added.) "A probation revocation hearing is not . . . a criminal prosecution." *Hill v. State,* supra. It has been denominated as "administrative in nature." *Hill v. State, supra.*

In interpreting the Double Jeopardy Clause embodied in Art. I, Sec. 14, Tex. Const.,[3] this Court held in *Johnson v. State,* 73 Tex.Cr.R. 133, 164 S.W. 833, "A person is in legal jeopardy when he is put upon trial, before a court of competent jurisdiction, upon an indictment or information . . sufficient in form and substance to sustain a conviction, and a jury has been . . . impaneled and sworn to try the case," at 834. See *Thompson v. State,* Tex.Cr.App., 527 S.W.2d 888. We are thus constrained to hold that the double jeopardy protections of both the Texas and Federal Constitutions do not apply to a proceeding wherein the result is deemed to be neither a conviction nor acquittal, see *Barber v. State,* Tex.Cr. App., 486 S.W.2d 352; a proceeding that is not considered to be a trial, "as that term is used and contemplated by the Constitution in reference to criminal cases . . .," *Wilson v. State,* 156 Tex.Cr.R. 228, 240 S.W.2d 774, 776; *Campbell v. State,* Tex.Cr. App., 456 S.W.2d 918; a proceeding which is not considered to be a criminal prosecution, *Hill v. State, supra,* and is considered to be only "administrative in nature." *Hill v. State, supra.*

In *Bass v. State,* Tex.Cr.App., 501 S.W.2d 643, cert. denied 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 873, we rejected the defendant's contention that the revocation of his probation based "on the same evidence heard by the same court in denying a prior motion to revoke" violated double jeopardy protection. In that case, the testimony adduced at the first hearing was introduced again at a subsequent hearing to revoke, along with the information, judgment, sentence and mandate of affirmance of a conviction for misdemeanor embezzlement. The same offense was the subject of both of the State's motions to revoke probation. In finding no double jeopardy violations, we cited *Settles v. State,* Tex.Cr.App., 403 S.W.2d 417, and held, "The allegation in a motion to revoke probation that probationer has committed a particular offense when the motion is heard by the court does not constitute jeopardy and will not bar a subsequent prosecution for such offense." *Bass,* at 644.

In *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), the Supreme Court held, "[T]he risk to which the [Double Jeopardy] Clause refers is not present in proceedings that are not essentially criminal." Id., at 528, 95 S.Ct. at 1785.

---

2. This case does not present the same factual situation as was discussed in *Banks v. State,* Tex.Cr.App., 503 S.W.2d 582.

3. "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."

In light of the nature of the probation revocation proceeding, we hold that the double jeopardy protection of the Texas and United States Constitutions is not applicable.

### Res Judicata Issue

■ The appellant next contends that the trial court abused its discretion in refusing to dismiss the State's second motion to revoke probation because the prosecution of the second motion was barred by the doctrine of res judicata. Appellant contends that the doctrine of res judicata applies even where a plea of double jeopardy would not lie, and further argues that public policy considerations would be violated if the State were allowed to relitigate after it has been once litigated and the issues finally disposed of.

"[R]es judicata is the doctrine that an existing final judgment or decree, rendered on the merits, without fraud or collusion, by a court of competent jurisdiction, on a matter within its jurisdiction is conclusive of the rights of the parties or their privies in all other actions or suits in the same court, or in any other judicial tribunal of concurrent jurisdiction, on points and matters in issue in the first suit." *Goldberg v. Goldberg,* 425 S.W.2d 830, 831 (Tex.Civ.App., Ft. Worth 1968, no writ history). See also *McGuire v. Commercial Union Insurance Co.,* 431 S.W.2d 347 (Tex.Sup.1968). *Parr v. Parr,* 543 S.W.2d 433 (Tex.Civ.App., Corpus Christi, 1976, no writ history).

It has also been held, however, that res judicata does not apply to administrative decision-making. See *Bryant v. L. H. Moore Canning Co.,* 509 S.W.2d 432 (Tex. Civ.App.—Corpus Christi, 1974), cert. denied 419 U.S. 945, 95 S.Ct. 79, 42 L.Ed.2d 74; *Railroad Commission v. Phillips,* 364 S.W.2d 408 (Tex.Civ.App.—Austin, 1963); *Killingsworth v. Broyles,* 300 S.W.2d 164 (Tex.Civ.App.—Austin, 1957).

In *Hill v. State,* supra, it was held that a probation revocation hearing is administrative in nature. Under Texas statutory law, this nature of the proceeding is apparent.

Article 42.12, V.A.C.C.P., is the Adult Probation Law. In the opening sentence of the first section of that Act it is stated:

"It is the purpose of this Article to place wholly within the State courts of appropriate jurisdiction the responsibility for determining when the imposition of sentence in certain cases shall be suspended, the conditions of probation, and the supervision of probationers, in consonance with the powers assigned to the judicial branch of this government by the Constitution of Texas."

The administrative supervision of the probationer by the court is also stated in Sec. 3 of the Act:

"Any such person placed on probation, whether in a trial by jury or before the court, shall be under the supervision of such court."

We hold the supervision of probationers is an administrative function of the courts and not a judicial function, and that the revocation hearing and the decision to revoke probation or not is administrative in nature. We therefore hold that the doctrine of res judicata does not apply. See and cf. *Bass v. State,* supra; *Wester v. State,* Tex.Cr.App., 542 S.W.2d 403; *Sappington v. State,* Tex.Cr.App., 508 S.W.2d 840; *Traylor v. State,* Tex.Cr.App., 561 S.W.2d 492. The contention is overruled.

■ In his last contention appellant argues the evidence is insufficient to show he was intoxicated as alleged in the motion to revoke. Officer Lisowski, the arresting officer, testified that he stopped appellant because the car he was driving was moving at a rapid speed and almost collided with two cars as it made a right hand turn. When appellant stepped from the car he was very unsure of his footing and almost fell. During his conversation with the officer he came very close, and had a moderate odor of alcoholic beverage at two inches distance. The officer stated that in his opinion appellant had been drinking alcoholic beverages and was intoxicated. He also testified that a person may have only a moderate odor of alcohol and still be intoxicated. The contention is without merit.

We find no abuse of discretion and affirm the order revoking probation.

PHILLIPS, Judge, dissenting.

The majority concludes that the State's successful second effort to revoke appellant's probation based on the *same* alleged offense committed by the probationer while on probation does not violate the double jeopardy clauses of the Texas and United States Constitutions. See U. S. Constitution, Fifth Amendment; Texas Constitution, Article I, Section 14. They also conclude that the collateral civil doctrine of res judicata does not apply to appellant's situation.

## I.

With respect to the majority's disposition of the first issue, heavy concentration is placed upon previous characterizations of the revocation of probation proceeding. It has variously been interpreted as a remedy for a contractual breach by the probationer or as an administrative proceeding in nature. Majority opinion, infra at 75; *Kelly v. State,* Tex.Cr.App., 483 S.W.2d 467, 469; *Hill v. State,* Tex.Cr.App., 480 S.W.2d 200. Reliance is also had on the authority of *Bass v. State,* Tex.Cr.App., 501 S.W.2d 643, a case that can be considered "on all fours." Nevertheless, as will be explained below, I believe the authority of *Bass v. State,* supra, and the majority's disposition of appellant's ground of error are in error.

The first order of analysis under a claim of a double jeopardy violation is to eschew those labels that serve to obfuscate more than clarify. This is clearly the teaching of *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). The Court in *Breed* was concerned with the question of whether an adjudicatory proceeding against a juvenile under the California Welfare and Institutions Code in which testimony was adduced before the juvenile court concerning the facts of the offense allegedly committed by the alleged juvenile delinquent constituted jeopardy insofar as it would operate as a bar against any subsequent prosecution of the juvenile as an adult. In *Breed,* after the required adjudicatory hearing, the juvenile was found to be delinquent as defined under the California Welfare and Institutions Code, but not amenable to the rehabilitation programs available for juvenile offenders. The juvenile was then transferred to the adult system for prosecution as an adult felon. Of significance to the conclusion that the same doctrine should apply to this State's revocation of probation proceedings is the fact that under Section 701 of the California Welfare and Institutions Code the adjudicatory hearing is conducted before the court, without a jury, and the burden of proof shouldered by the State in establishing that the juvenile is delinquent is a *preponderance of the evidence.* The same burden of proof applies in this State's probation revocation proceedings. *Scamardo v. State,* 517 S.W.2d 293. Furthermore, when the basis for the State's motion to revoke a probation is based upon the alleged commission of an offense against the laws of this State, the State is required to prove each element of the offense allegedly committed by the probationer before revocation orders can be entered. *Battle v. State,* 571 S.W.2d 20 (No. 57,806, 1978); *Holder v. State,* 571 S.W.2d 885 (1978); *Jones v. State,* Tex.Cr.App., 560 S.W.2d 673; *Wygal v. State,* Tex.Cr.App., 555 S.W.2d 465.

The Court in *Breed* wrote:

"We believe it is simply too late in the day to conclude, as did the District Court in this case, that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include the stigma inherent in such a determination and the deprivation of liberty for many years." *Breed v. Jones,* 421 U.S. at 529, 95 S.Ct. at 1785.

"Jeopardy denotes risk. In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution." *Id.,* U.S. at 528, 95 S.Ct. at 1785.

"As we have observed, the risk to which the term jeopardy refers is that

traditionally associated with 'actions intended to authorize criminal punishment to vindicate public justice.' [Citations omitted] Because of its purpose and potential consequences, and the nature and resources of the State, such a proceeding imposes heavy pressures and burdens—psychological, physical, and financial—on a person charged. The purpose of the Double Jeopardy Clause is to require that he be subject to the experience only once 'for the same offense.' [Citations omitted]." *Id.,* U.S. at 529–530, 95 S.Ct. at 1786.

In concluding their analysis of the California juvenile adjudicatory process under the double jeopardy doctrine, the Supreme Court wrote:

"Thus, in terms of potential consequences, there is little to distinguish an adjudicatory hearing such as was held in this case from a traditional criminal prosecution. For that reason, it engenders elements of 'anxiety and insecurity' in a juvenile, and imposes a 'heavy personal strain.'" *Id.,* U.S. at 530–531, 95 S.Ct. at 1786.

Turning to this State's probation revocation proceeding, it is evident that one "risk" a probationer is subjected to upon the filing of a motion to revoke probation and a hearing on that motion is the revocation of the probation and the immediate imposition of a penalty previously assessed. Regardless of what label we attach to the proceeding, the consequence is the same. The probationer faces the "risk" of losing his liberty.

Notwithstanding the greater resources and power available to the State, the burdens imposed upon them in order to effect a revocation of one's probation are much less than in a traditional criminal prosecution. As was already noted, the burden of proof is only by a preponderance of evidence instead of beyond a reasonable doubt. Further, accomplice witnesses need not be corroborated. *Howery v. State,* Tex.Cr.App., 528 S.W.2d 230. Confessions of the probationer need not be corroborated. *Bush v. State,* Tex.Cr.App., 506 S.W.2d 603. The motion to revoke probation need not be as

precise as an indictment or information, but need only give fair notice to the probationer of the condition of probation allegedly violated. *Figgins v. State,* Tex.Cr.App., 528 S.W.2d 261. In fact, should the proof adduced during the proceedings vary from the motion to revoke probation on file, the trial court is empowered to permit the State to make an amendment to its pleadings. *Banks v. State,* Tex.Cr.App., 491 S.W.2d 417; *Cabrera v. State,* Tex.Cr.App., 494 S.W.2d 177; *Spencer v. State,* Tex.Cr.App., 503 S.W.2d 557.

Yet the anxiety, insecurity, strain, and potential of imprisonment are real "risks" faced by the probationer brought before the court on a motion to revoke probation filed by the State. The stigma from a revocation of probation is real, especially when the revokee is subsequently considered for parole.

It occurs to me that in light of this overwhelming advantage possessed by the State and the "risks" facing the probationer, the doctrine of double jeopardy should apply to a subsequent revocation of probation proceeding in which the basis for the State's motion to revoke is the same offense previously alleged for revocation purposes, but which the State failed to prove to the satisfaction of the trial court with sufficient evidence. Under these narrow circumstances, appellant should be entitled to reversal.

In the instant case, an order was signed and entered by the trial judge on October 27, 1976, following a hearing on the State's September 3, 1976, motion to revoke probation. That order reads, in pertinent part:

". . . The Court proceeded to hear evidence on said motion and after hearing said evidence and the arguments of counsel and considering the same and the law, the Court is of the opinion and so *holds that the evidence is insufficient* inasmuch as there is no evidence to show that the defendant operated a motor vehicle on a public road and highway in the State of Texas and County of El Paso." (Emphasis added.)

In this rare situation where the trial court *expressly* finds that the evidence is insuffi-

cient, the doctrine of double jeopardy should certainly attach to any subsequent efforts to revoke the probationer's condition on the same offense. See *Burks v. U. S.,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

As stated by the Supreme Court in *Burks v. U. S.,* supra, "the purposes of the Clause [double jeopardy] would be negated were we to afford the Government an opportunity for the proverbial 'second bite at the apple.'" 437 U.S. at 17, 98 S.Ct. at 2150.

The majority relies on *Bass v. State,* supra, a terse opinion which in turn relied on *Settles v. State,* Tex.Cr.App., 403 S.W.2d 417, and *Barber v. State,* Tex.Cr.App., 486 S.W.2d 352. The reliance of this Court in *Bass* on the inapposite cases of *Settles* and *Barber* should be reconsidered. The *Bass* case represented a situation similar to the instant matter. A motion to revoke probation was heard and denied in February of 1970. The precise basis for the denial of the State's motion to revoke is not explained. Nevertheless, two years later a hearing was conducted on a motion to revoke probation alleging the same offense that was considered in the February 1970 hearing. At the subsequent hearing appellant's probation was revoked after the same evidence was introduced as in the first hearing, as well as the information, judgment, sentence, and mandate of affirmance of appellant's conviction for misdemeanor embezzlement. This Court merely concluded that no abuse of discretion was shown and relied on the authorities referred to above. An analysis of the authorities relied upon by this Court in *Bass* shows that different procedural contexts were involved in those cases.

In *Settles* the appellant attempted to invoke the prior unsuccessful effort of the State to revoke his probation as a bar to his subsequent prosecution on the substantive offense of aggravated assault. The first risk faced by appellant was the revocation of his probation and the imposition of a sentence previously suspended. In the lat-

ter proceeding brought up to this Court on direct appeal, the risk was the assessment of a penalty for the actual offense involved.

*Barber v. State,* supra, involved the appellant's contention that the trial court abused its discretion in permitting the State to amend its motion to revoke probation during the hearing on the original motion to revoke probation. Appellant made the argument that such action constituted double jeopardy, thus an abuse of discretion. This Court concluded that such a contention was without merit. I would submit that the decision in *Barber* was correct, but totally inapposite to the issues raised in *Bass* and the instant case. I would conclude, therefore, that *Bass* should be overruled.

This case does not involve collateral questions that some might fear would be answered or implicated in the holding I propose. First, it does not deal with the State pursuing a motion to revoke probation after the probationer was acquitted on the substantive offense alleged in the motion to revoke probation as a violation of the probationary conditions. Further, it does not address the question raised in *Settles,* on which some doubt might be cast, of instituting substantive criminal prosecutions against probationers after the State has attempted to revoke their probation on the basis of the same offense, but which the trial court concluded were insufficiently proven by the State. We leave those questions for another day.

The majority decision quotes from *Breed v. Jones,* supra, that "[T]he risk to which the [Double Jeopardy] Clause refers is not present in proceedings that are not essentially criminal." A review of the cases cited by the Supreme Court in support of that phrase reflects that the "risks" involved in the various cases were the forfeiture of smuggled goods [*One Lot Emerald Cut Stones v. U. S.,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972)], the collection of double damages, plus forfeiture of actual damages, pursuant to "informer statutes" because of the collusive bidding on government work projects [*U. S. ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed.

443 (1943)], and the collection of a 50 percent penalty calculated on the deficiency in taxes paid to the Internal Revenue Service [*Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938)]. None of the cases involved the type of "risk" faced by either a criminal defendant or probationer facing a motion to revoke probation. However, there is one quotation from *Helvering v. Mitchell,* supra, which if interpreted literally and out of context would present a disquieting prospect for my position. That is:

> "Remedial sanctions may be of varying types. One which is characteristically free of the punitive criminal element is revocation of a privilege voluntarily granted." *Id.,* U.S. 399, 58 S.Ct. at 633.

However, the cases on which that proposition was based involved alien deportations and disbarments. Neither of those consequences involves the loss of liberty traditionally associated with criminal prosecutions or "criminal punishment to vindicate public justice."

Finally, an analysis that holds true to the teachings of *Breed v. Jones,* supra, needs to answer the question raised by the following excerpt:

> "If there is to be an exception to that protection [of the double jeopardy clause] in the context of the juvenile-court system, it must be justified by interests of society, reflected in that unique institution, or of juveniles themselves, of sufficient substance to render tolerable the costs and burdens, noted earlier, which the exception will entail in individual cases."

In *Breed* the Court was confronted with the contention that to apply the protections of the double jeopardy clause to the proceedings at issue would deprive the juvenile court system of California of the flexibility needed to deal with youthful offenders. This contention was rejected by the Supreme Court since from a review of procedures in other states it was clear that a waiver of jurisdiction and transfer proceeding could be accomplished without a full adjudication of the facts of the offense as was done under the California procedures.

Similarly, the application of the protections of the double jeopardy clause to probationers whom the State seeks to imprison after having failed to prove their allegations on their first try will not disrupt any legitimate State interests. The only burden on the State created by the application of this doctrine is that they do the job right the first time. The people of this State deserve no less and the prosecutors of this State should expect no more.

Therefore, I would hold that in a case where the trial court *expressly* finds that the evidence was insufficient to sustain the State's motion to revoke probation based on an allegation that the probationer committed an offense in violation of his probationary conditions, the double jeopardy clause of the United States and Texas Constitutions protects that probationer from any subsequent efforts by the State to revoke his probation based on the *same* alleged *offense.*

## II.

Again, in confronting the contention of appellant that, in the alternative, the res judicata doctrine applies to the situation described above, the majority shields this State's probation revocation proceedings behind labels of convenience. By considering the matter administrative in nature and not judicial, the majority concludes that the doctrine of res judicata does not apply. Should the foregoing analysis and discussion which concludes that the double jeopardy clause should attach to such proceedings not be accepted, I would submit that in the alternative the doctrine of res judicata should apply.

The doctrine of res judicata is based on public policy:

> ". . . Once the claims of the parties have been determined by the ultimate tribunal provided by law for their adjudication, the matter should be concluded. It is recognized that there must be an end of litigation somewhere, and that when a case has once been tried and the issues duly disposed of, the litigation should be ended, unless some proper

ground is shown for vacation or modification of the judgment by a higher tribunal or a court of equity, since the parties have had their day in court and the judgment of the court, which is presumably correct, impartial, and honest, should be conclusive on them." 34 Tex.Jur.2d, Judgments, Sec. 451, pp. 492–495.

Under the facts as presented in the case at bar, and in the event the double jeopardy doctrine is considered inapplicable, I perceive no reason why the doctrine of res judicata should not bar the State's attempt to relitigate the issue previously decided in appellant's favor. Why should appellant be required to defend himself again in a revocation of probation proceeding based upon the *same* alleged probationary violation previously adjudicated adversely to the State? We see no reason in law or logic why the State should have an opportunity to take a "second bite out of the apple."

The State argues that the argument does not apply here because one of the requisites of res judicata is the existence of a final judgment and the order entered after a probation revocation hearing is not a judgment as defined in Article 42.01, V.A.C.C.P. While such an order is not a judgment of conviction as defined in Article 42.01, supra, it is nevertheless a final judgment. It is a judgment because it rules on the issues of fact and law litigated before it in the hearing, and either grants or denies the revocation sought by the State. Article 42.01, supra, by its very terms cannot apply to revocation proceedings. The *finality* of the trial court's order of either revoking probation or continuing the defendant on probation in respect to the alleged violations cannot be questioned. In *Wester v. State,* 542 S.W.2d 403, the trial court found the defendant had violated his probation, but in its discretion continued him on probation. On a subsequent arrest the trial court revoked probation on the previously found violation. *Wester* held the trial court could not go behind the order continuing the defendant on probation even though adequate grounds for revocation had previously been shown. "To hold otherwise would violate due process, due course of the law of the

land and fundamental fairness." *Id.* at 406. Clearly, after the trial judge had continued the defendant therein on probation, and had made his ruling denying the State's motion to revoke, that order was *final.* See and compare *Wester v. State,* supra, with *Sappington v. State,* Tex.Cr.App., 508 S.W.2d 840, and *Traylor v. State,* Tex.Cr.App., 561 S.W.2d 492.

Mr. Justice Holmes, speaking for the Supreme Court in *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916), expressed the view:

"Upon the merits the proposition of the government is that the doctrine of res judicata does not exist for criminal cases except in the modified form of the 5th Amendment, that a person shall not be subject for the same offense to be twice put in jeopardy of life or limb; . . .

\* \* \* \* \* \*

The safeguard provided by the Constitution against the gravest abuses has tended to give the impression that when it did not apply in terms, there was no other principle that could. But the 5th Amendment was not intended to do away with what in the civil law is a fundamental principle of justice . . . in order, when a man once has been acquitted on the merits, to enable the government to prosecute him a second time."

Although res judicata in principle and theory springs from the same fundamental principle of justice as does the double jeopardy clause, it can be applied in cases where a plea of former acquittal or former conviction could not be entertained, and where double jeopardy protections do not apply. See 9 A.L.R.3rd 203 and cases cited therein.

It cannot be doubted that due process applied to probation revocation hearings. *Spencer v. State,* Tex.Cr.App., 503 S.W.2d 557; *Wester v. State,* supra. To hold that the State could again litigate the *same issue* that had once before been fairly and finally adjudicated would thwart basic concepts of fundamental fairness. Cf. *Wester v. State,* supra. Certainly the benefit accruing to the State by allowing it to file another

motion to revoke probation alleging the same facts on the same alleged probationary violation that had been adjudicated adversely to it previously after a full and fair hearing is outweighed by the burden such a practice would place on the probationer by requiring him to again defend against the *same charge.* Where would a rule allowing relitigation by the State stop? After two unsuccessful bites at the apple? After a dozen? The line must be drawn at one day in court. Cf. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 40 L.Ed.2d 1067 (1976). The State had already had its day in court on the facts reurged in its second motion to revoke probation. The trial court in the first proceeding made an express finding that the evidence was insufficient to support a revocation order.

In *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, the Supreme Court stated:

"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for the alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Id.,* U.S. at 187–188, 78 S.Ct. at 223.

I would therefore conclude that, in the alternative, the doctrine of res judicata operates as an equal bar against the second effort of the State to revoke appellant's probation on the same offense on which they previously failed to muster sufficient evidence.

For the foregoing reasons I respectfully dissent.

ONION, P. J., and ROBERTS, J., join in this dissent.