Jerry Don **BLUNT**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–85–136–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 13, 1986.

John A. Neal, Graham, for appellant.

Timothy D. Eyssen, Dist. Atty., Graham, for the State.

Before JOE SPURLOCK, II, HOPKINS and HUGHES (Retired), JJ.

## OPINION

HOPKINS, Justice.

This is an appeal from a judgment revoking probation. The trial court found that appellant had violated the terms and conditions of probation in that he did not (1) avoid the use of alcoholic beverages and (2) did not deport himself so as not to injure his health. Appellant was sentenced to three years confinement in the Texas Department of Corrections.

The judgment is reversed and remanded.

The appellant alleges two grounds of error, each of which complain of the admission of medical evidence of appellant's use of alcoholic beverages contrary to the conditions of his probation.

In appellant's first ground of error he complains of the admission of the laboratory report of his blood analysis and also the admission of verbal communications between the attending physician and appellant. The second ground of error re-urges the alleged error of admission of the verbal communications. For purposes of clarity, we will first give a brief summary of the facts followed by a discussion of the verbal communications and conclude with a discussion of the admission of the written blood test report. Although the record is somewhat unclear, it would seem that appellant was taken to a hospital emergency room in a "non-responsive" condition. The attending physician, Dr. Smith, directed that a blood sample be taken from appellant for analysis. Through the witness Stevens, the State offered and the court admitted into evidence, over the objection of appellant, the laboratory report of the analysis of appellant's blood sample and certain oral communications between Dr. Smith and appellant to the effect that Dr. Smith had told appellant that he (appellant) "evidently was allergic to alcohol and that if he kept on it would probably kill him some day." Appellant replied that he realized that would happen. It is the admission of this evidence that is made the subject of appellant's grounds of error.

The appellant contends that the communication between appellant and Dr. Smith was inadmissible because of the privilege against disclosure of physician/patient communications. The appellant cites as authority the provisions of TEX.REV.CIV. STAT.ANN. art. 4495b, sec. 5.08 (Vernon Supp.1986) and TEX.R.EVID. 509. Appellant acknowledges that the Texas Rules of Evidence adopted by our Supreme Court repealed art. 4495b, sec. 5.08 as it relates to civil actions, but contends such provisions are still operable as to criminal proceedings under TEX.CODE CRIM.PROC.ANN. art.

38.02 (Vernon 1979). Article 38.02 provides that the rules of evidence prescribed in the statute law in civil suits shall so far as applicable, govern also in criminal actions when not in conflict with the provisions of the Code of Criminal Procedure or the Penal Code. The pertinent provisions of art. 4495b, sec. 5.08 are:

> Sec. 5.08. (a) Communications between one licensed to practice medicine, relative to or in connection with any professional services as a physician to a patient, is confidential and privileged and may not be disclosed ...

The State contends art. 4495b, sec. 5.08 is inapplicable to revocation proceedings because it conflicts with the provision of the Texas Code of Criminal Procedure which excludes certain other communications but does not exclude communications between physician and patient.

■ TEX.CODE CRIM.PROC.ANN. art. 38.10 (Vernon Supp.1986) provides that all persons "except those enumerated in Articles 38.06, 38.101, 38.11, and 38.111, whatever may be the relationship between the defendant and witness, are competent to testify, except that an attorney at law shall not disclose a communication made to him by his client ..." TEX.CODE CRIM. PROC.ANN. art. 38.06 (Vernon 1979) specifies those persons competent to testify and does not exclude physicians or other medical personnel. TEX.CODE CRIM.PROC. ANN. art. 38.101 (Vernon 1979) excludes communications relating to treatment or examination for drug abuse. TEX.CODE CRIM.PROC.ANN. art. 38.11 (Vernon Supp.1986) sets forth the husband/wife privilege and TEX.CODE CRIM.PROC. ANN. art. 38.111 (Vernon Supp.1986) deals with the "clergyman" privilege. We have not been cited nor have we been able to find any provision in the Code pertaining to the inadmissibility of communications between physician and patient and we must conclude that the legislature has not seen fit to extend the application of this privilege to criminal proceedings. Since the Code does provide for the inadmissibility of communications between husband and wife, attorney and client, defendant and clergyman, persons and drug treating personnel in limited situations, but does not provide for inadmissibility of communications between physician and patient, we hold that art. 4495b, sec. 5.08 is in conflict with the Code of Criminal Procedure and is inapplicable to communications between physician and patient in proceedings governed by the Code.

Appellant alternatively asserts that rule 509, Texas Rules of Evidence, excluding confidential communications between physician and patient is applicable to a revocation of probation proceeding because such proceeding "is not a criminal prosecution, instead, it is administrative in nature." The pertinent portion of the rule is as follows:

> Rule 509(b)(1).
>
> Confidential communications between a physician and a patient, relative to or in connection with any professional services rendered by a physician to the patient are privileged and may not be disclosed.

We agree that a revocation of probation proceeding is not a criminal prosecution and that it has been held by the Court of Criminal Appeals to be administrative in nature, but we do not agree that such proceeding is to be governed by rule 509, Texas Rules of Evidence instead of the provisions of the Texas Code of Criminal Procedure.

Unfortunately, Texas courts in determining various issues pertaining to revocation hearings have often, in explaining the basis for a particular determination, attempted to affix a label defining the character or type of proceeding. Although such labeling was probably unnecessary to the case determination, it has become a part of our jurisprudence and has given rise to the particular issue now before this court. So far as we have been able to ascertain, this question is one of first impression for the appellate courts of this state.

Without attempting an exhaustive review of all the cases which contain language attempting to label or characterize probation revocation proceedings, we deem it

necessary to the disposition of the issue presented to briefly list some of the decisions and dissenting opinions to show that there has been, and perhaps still is, a difference of opinion among the members and former members of the two highest appellate courts of this state.

In *Campbell v. State*, 456 S.W.2d 918, 921 (Tex.Crim.App.1970), Judge Onion, writing for the court, said, "[i]t would indeed now be difficult to conclude that probation revocation hearings are not criminal proceedings 'where substantial rights of an accused may be affected.' *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 [ (1967) ]. The revocation proceedings cannot be isolated from the context of the criminal process." In *Fariss v. Tipps*, 463 S.W.2d 176, 178 (Tex.1971) our Supreme Court in an opinion by Chief Justice Calvert, after recognizing that the Court of Criminal Appeals had held that a revocation proceeding is not the type of "criminal prosecution" in which the defendant can demand a jury trial, citing *Hood v. State*, 458 S.W.2d 662 (Tex.Crim.App.1970) and *Wilson v. State*, 156 Tex.Cr.R. 228, 240 S.W.2d 774 (1951), nevertheless, held that on the issues of public trial or speedy trial, the proceeding is a "criminal prosecution." *Fariss v. Tipps*, 463 S.W.2d at 179. Thereafter in *Hill v. State*, 480 S.W.2d 200 (Tex. Crim.App.1971), Commissioner Dally, in writing the original opinion affirming the revocation, acknowledged that probation revocation hearings are criminal proceedings " 'where substantial rights of a criminal accused may be affected, . . . ' and 'cannot be isolated from the context of the criminal process,' " and further, that the proceeding is not a trial in a constitutional sense. *Id.* at 202. However, in the court's opinion denying the motion for rehearing, Judge Odom wrote, "[a] probation revocation hearing is not an adversarial proceeding, a civil action, or a criminal prosecution. . . . Instead, it is administrative in nature, a means of protecting society and rehabilitating lawbreakers." *Id.* at 202–03. Presiding Judge Onion's dissent pointed out the holding was in conflict with the Court's earlier decision in *Campbell v.*

*State*, and further, "[i]t is indeed regrettable that today's holding flies into the teeth of the holding of the Supreme Court of Texas that revocation of probation proceedings are a 'criminal prosecution' within the meaning of the state constitution." *Id.* at 206, citing *Fariss v. Tipps*, 463 S.W.2d 176.

In *Whisenant v. State*, 557 S.W.2d 102, 104–05 (Tex.Crim.App.1977), Commissioner Dally writing for the court stated, "[t]he proceeding to revoke probation, although not the same as a criminal trial, requires substantially all the same procedure. . . . An adversary proceeding is afforded the probationer in which almost all of the rules of evidence and criminal procedure are applicable." Then in *Davenport v. State*, 574 S.W.2d 73 (Tex.Crim.App.1978), in the majority opinion written by Judge Odom, the Court makes the jump from the supervision of probationers to the revocation hearing without so much as slowing down or shifting gears as evidenced by the following:

> We hold the supervision of probationers is an administrative function of the courts and not a judicial function, and that the revocation hearing and the decision to revoke probation or not is administrative in nature.

*Id.* at 76. In *Davenport*, the Court holds that double jeopardy is inapplicable to revocation proceedings because such is not a criminal trial and no conviction results therefrom. The Court also holds that res judicata is not applicable to such proceedings because that doctrine does not apply to "administrative decisionmaking." *Id.* The dissenting opinion, in which Judges Onion and Roberts joined Judge Phillips, after noting that the majority opinion placed heavy concentration upon previous characterization of revocation proceedings as "a contractual breach by the probationer or as an administrative proceeding in nature," *id.* at 77, opined that regardless of the label attached to the proceeding, the probationer faces the risk of losing his liberty. *Id.* at 78. And on the issue of res judicata, the dissenting opinion states, "the majority shields this State's probation revocation proceedings behind labels of conve-

nience. By considering the matter administrative in nature and not judicial, the majority concludes that the doctrine of res judicata does not apply." *Id.* at 80.

In *Ruedas v. State*, 586 S.W.2d 520, 524 (Tex.Crim.App.1979) the majority opinion, written by Judge Roberts, after citing *Whisenant v. State*, held that a probationer was entitled to have counsel give a final argument at a revocation proceeding because the hearing was an adversary proceeding. This statement is in direct conflict with the majority opinion in *Hill v. State*, where Judge Odom wrote that such hearings are not adversarial proceedings.

■ From a review of the cases cited, as well as others, we conclude that a probation revocation proceeding is not a criminal trial in the constitutional sense, neither is it a civil action nor a purely administrative hearing, ungoverned by any rules of evidence. It is an adversarial proceeding in which almost all the rules of criminal procedure and evidence are applicable.

Without intending to add further confusion on the subject by labeling revocation of probation proceedings as being quasi-criminal in nature, we hold that where applicable, the Texas Code of Criminal Procedure governs such proceedings. Therefore, the provisions of rule 509(b)(1), Texas Rules of Evidence, relative to privileged communications between physician and patient are not applicable to such proceedings because they conflict with the provisions of the Texas Code of Criminal Procedure governing privileged communications.

■ We shall now proceed with a discussion of the admissibility of the written blood analysis report. TEX.REV.CIV. STAT.ANN. art. 4495b, sec. 5.08(b) provides:

Records of the identity, diagnosis, evaluation, or treatment of a patient by a physician that are created or maintained by a physician are confidential and privileged and may not be disclosed except as provided in this section.

The State has not cited any provision of the Code of Criminal Procedure that speaks to the issue of confidential reports, as distinguished from confidential communications, and we have been unable to find any such provisions in the Code. As art. 4495b, sec. 5.08(b) is not in conflict with the Texas Code of Criminal Procedure, its provisions are applicable to criminal proceedings by virtue of the applicability of TEX.CODE CRIM.PROC.ANN. art. 38.02. The pertinent provisions of the Rules of Evidence are:

Rule 101(b).

Except as otherwise provided by statute, these rules govern civil proceedings in all courts of Texas other than small claims courts.

\* \* \* \* \* \*

Rule 509(a)(3).

A communication is 'confidential' if not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination, or interview, or persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the physician, including members of the patient's family.

\* \* \* \* \* \*

Rule 509(b)(2).

Records of the identity, diagnosis, evaluation, or treatment of a patient by a physician that are created or maintained by a physician are confidential and privileged and may not be disclosed.

Therefore, regardless of the label attached to revocation of probation proceedings, it was error for the trial court to admit into evidence over appellant's timely objection the blood analysis report authorized and initiated by Dr. Smith. Appellant's first ground of error is sustained and because we are unable to determine whether the trial court based its findings of appellant's violation of conditions of probation in whole or in part on the written report, we must reverse the judgment and remand the case to the trial court for a new hearing.

The judgment is reversed and the cause remanded to the trial court.