OPINION
STEPHEN F. PRESLAR, Chief Justice.
This is an appeal from a denial of habeas corpus relief in the district court. Appellant had been convicted of murder in the 41st District Court of El Paso County. Showery v. State, 690 S.W.2d 689 (Tex.App., 8th Dist. 1985, petition pending) (affirming the conviction). Appellant was released from custody upon an appellate bond. Thereafter, the State moved to revoke the appellate bond alleging subsequent commission of involuntary manslaughter. The trial court revoked the bond under Tex.Code Crim.Pro.Ann. arts. 44.04(c), 44.12 and 44.20 (Vernon 1979 and Supp 1986). In an unpublished opinion issued on September 26, 1984, this Court reversed the trial court decision based upon insufficient evidence to demonstrate by a preponderance of proof that Appellant had violated the conditions of his bond by committing the alleged subsequent offense of involuntary manslaughter. Showery v. State, (Cause No. 08-84-00194-CR, September 26, 1984). The judgment of this Court was affirmed by the Court of Criminal Appeals in an unpublished opinion issued April 17, 1985. (Cause No. 1077-84, State’s motion for rehearing denied June 26, 1985).
Appellant next filed a habeas corpus challenge to the continued effort to prosecute the involuntary manslaughter indictment pending in the 65th District Court. Relief was denied by the lower court.
Appellant’s assertion below, and before this Court is that further prosecution of the involuntary manslaughter charge is precluded by the doctrines of res judicata and collateral estoppel based upon the insufficiency of the State’s evidentiary presentation in the murder/appellate bond revocation proceeding. Appellant relies primarily upon Ashe v. Swenson, 397 U.S. 436, 90 *155 S.Ct. 1189, 25 L.Ed.2d 469 (1970), with support by analogy derived from Disheroon v. State, 687 S.W.2d 332 (Tex.Crim.App.1985) and Ex parte Tarver, 695 S.W.2d 344, (Tex.App., 1st Dist 1985). The State counters with reference to Davenport v. State, 574 S.W.2d 73 (Tex.Crim.App.1978). Both sides acknowledge the distinction between double jeopardy and the corollary doctrines of res judicata and collateral estoppel. Thus, the rules to be considered are as follows:
“[R]es judicata is the doctrine that an existing final judgment or decree, rendered on the merits without fraud or collusion, by a court of competent jurisdiction, on a matter within its jurisdiction is conclusive of the rights of the parties or their privies in all other actions or suits in the same court, or in any other judicial tribunal of concurrent jurisdiction, on points and matters in issue in the first suit.” [citations omitted]. Davenport, at 76.
Collateral estoppel:
[M]eans simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Ashe [397 U.S.] at 443, 25 L.Ed.2d at 475, 90 S.Ct. at 1194.
'We find that the lower court was correct in refusing to apply either doctrine to the results of the bond revocation. First, neither of these doctrines is applicable to or flowing from a purely administrative proceeding. Davenport, supra. Ex parte Tarver is not persuasive in its efforts to circumvent Davenport and can only be seen as an effort to persuade the Court of Criminal Appeals to change its position with regard to double jeopardy and revocation proceedings. In any event, even if probation revocation goes the way of enhancement allegations and juvenile adjudications (See e.g. Disheroon, supra; Ex parte Augusta, 639 S.W.2d 481 (Tex.Crim.App.1982)), bond revocation proceedings are sufficiently distinguishable to avoid application of double jeopardy, collateral es-toppel and res judicata doctrines. The aforementioned proceedings involve a preliminary determination resulting in punitive incarceration. The Court of Criminal Appeals held in Davenport that revocation proceedings are administrative in nature (at least in a double jeopardy context) involving the court’s supervisory authority over the probationer. Even if the First Court of Appeals succeeds in convincing the Court of Criminal Appeals to abandon Davenport, the Davenport distinction between administrative and punitive judicial actions is still applicable to bond proceedings. See: United States v. One Assortment of 89 Firearms, 465 U.S. 354, 360, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361, 368 (1984). The result of the bond revocation in the 41st District Court in this Appellant’s murder case was not punitive incarceration, but the exercise of administrative control over his conduct and residence during the pending of his appeal. The Tarver court’s reliance on United States v. Utah Construction and Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) for the proposition that the current trend is to encompass initial administrative proceedings in the collateral estoppel ambit is misplaced. The Supreme Court expressly stated that such a result would obtain only when an administrative agency was acting in a judicial capacity. Id. at 422, 86 S.Ct. at 1560, 16 L.Ed.2d at 661. Appellant’s case reflects the exact opposite.
Those who have urged the expanded coverage of double jeopardy and its corollary principles have invariably focused upon concepts of “fundamental fairness” and eschewed the use of any mechanical analysis in deciding the appropriateness of precluding further prosecution. See e.g., Davenport (dissent by Phillips, J.). To apply collateral estoppel or res judicata on the facts of this case would require a violation of both principles so consistently urged. Attempts to rigidly define “risk,” “jeopardy,” “finality,” “ultimate issue” or “fairness,” either narrowly or broadly, provides no clarification but merely appellate “wish-fulfillment.” To argue the comparative results when the first proceeding im *156 poses either a lesser or greater evidentiary burden on the State than in the second challenged proceeding is to pursue the same fruitless approach. The basic purpose of each of these doctrines is to limit the ability of an arguably deep-pocket State authority to interminably seek the punishment of a less powerful, less resourceful individual member of our society whose conduct has already been factually evaluated by court or jury for purpose of punishment. Adherence to these basic concepts highlights a unifying thread of reason binding those situations in which the first finding or result was punitive, whether administrative or judicial in framework, and those in which the mere continued process of State pursuit, regardless of outcome, is itself punitive. In assessing individual cases, it is essential to consider not only the forums of the proceedings and the consequences for the defendant, but also the expectations of the litigants as they enter the first arena. Whether dealing with a remedial forfeiture or fine, (One Assortment of 89 Firearms, 465 U.S. at 361, 104 S.Ct. at 1106, 79 L.Ed.2d at 370), probation revocation or juvenile adjudication, both State and defendant, of necessity, must be considering a punitive result, the duration and character of which is intended to be proportional to the alleged misconduct (either immediate or previously imposed but suspended). Consequently, each side may reasonably be expected to tailor its eviden-tiary and procedural approach to achieve a “fundamentally” final result. That is not the case with this bond reduction any more so than was the case in Ex parte Robinson, 641 S.W.2d 552, 556 (Tex.Crim.App.1982) (double jeopardy rejected in examining trial result). While the Court in Robinson concluded that jeopardy did not apply because the examining trial judgment was not final, such explanation is not all there is to the opinion. Unspoken, but implicit, in Robinson and the other cited cases is the fact that neither side entertained even a reasonable expectation of finality. Here, the result of bond revocation was proportional not to the alleged misconduct while on bond but to the need for administrative control of the Appellant during the appeal of his prior conviction.
The Appellant may suggest that if the State in this ease could not even satisfy a preponderance of the evidence standard for bond revocation, he should not be subjected to further risk in a trial necessitating a State burden beyond a reasonable doubt. With neither side anticipating a final adjudication at the bond hearing, it is more unreasonable to expect the State to have developed a full trial evidentiary presentation. To extend collateral estoppel or res judicata consequences to this type of ancillary proceeding would cause the tail to wag the dog. In Texas, the jury determination of guilt or non-guilt may not be waived without State consent. No jury is available for bond revocation hearings. Appellant’s present argument would either turn our basic, clearly anticipated criminal adjudicatory framework topsy-turvy or preclude the State from seeking bond revocation for criminal conduct violating the terms of release. Such a result is not necessitated by the doctrines of double jeopardy, collateral estoppel or res judicata. Ground of Error No. One is overruled.
The judgment of the trial court is affirmed.