### Ex parte James McQueen BYRD.

### No. 70012.

Court of Criminal Appeals of Texas, En Banc.

May 25, 1988.

James McQueen Byrd, pro se.

John B. Holmes, Jr., Dist. Atty. and Deborah S. Williams, Asst. Dist. Atty., Hous-

ton, Robert Huttash, State's Atty., Austin, for State.

## OPINION

CLINTON, Judge.

This is an application for postconviction writ of habeas corpus brought pursuant to Article 11.07, V.A.C.C.P.

On March 19, 1984, applicant was convicted in cause number 397,826 by a jury of the offense of aggravated sexual assault, which offense had been committed on December 13, 1983. On March 20, the same jury assessed applicant's punishment at ten years' confinement in the Texas Department of Corrections and a fine of ten thousand dollars. Pursuant to the jury's recommendation, both the imprisonment and the fine were probated for a period of ten years. Article 42.12, § 3a, V.A.C.C.P. The terms and conditions of applicant's probation were explained to him on March 21, 1984, in open court, at which time applicant was supplied with a written copy of those terms and conditions.[1]

Among the terms and conditions of applicant's probation were the following:

"(a) Commit no offense against the laws of this or any other State or of the United States;

\*      \*      \*      \*      \*      \*

(k) Participate in the community-based program, The Shoulder, 5009 Calhoun, Houston, Texas, to report within 24 hours of release from jail, beginning March 21, 1984; faithfully follow all guidelines and instructions until successfully discharged or until further order of the Court;"

On April 11, 1984, the State filed a motion to revoke applicant's probation which set forth conditions (a) and (k), quoted above, and proceeded to allege that applicant had violated those conditions by com-

---

1. Applicant contended at the hearing on the State's first amended motion to revoke his probation that the terms and conditions of his probation were not explained to him until the 22nd of March. The judgment reflects that ap- plicant was placed on probation by the trial court and that the clerk provided him with a copy of the terms and conditions of his probation on March 21, 1984. We find it unnecessary to resolve this conflict.

mitting (1) the robbery of one Rose Williams, pursuant to V.T.C.A. Penal Code, § 29.02(a)(1), and (2) a technical violation of probation because applicant had left The Shoulder on April 5, without the permission of the court or of The Shoulder personnel. This second violation was alleged in the following terms:

"The State would further show the said Defendant did then and there violate terms and conditions of his probation by: leaving the Shoulder without permission of the Court or the Shoulder, to-wit; On April 5, 1984 the Defendant did leave the Shoulder without permission, in violation of the rules and regulations of the Shoulder."

On June 26, the State filed its first amended motion to revoke applicant's probation, again setting forth conditions (a) and (k), and alleging an attempted theft from the person of Rose Williams, pursuant to V.T.C.A. Penal Code, §§ 15.01(a), 31.03(b)(1), and 31.03(e)(4)(B), and the same technical violation of leaving The Shoulder on April 5, 1984, without permission of the court or of The Shoulder personnel, in violation of the rules and regulations of The Shoulder. This second violation was alleged as follows:

"The State would further show the said Defendant did then and there violate terms and conditions of his probation by: leaving the Shoulder without permission of the Court of [sic] the Shoulder, to-wit; On April 5, 1984 the Defendant did leave the Should [sic] without permission, in violation of the rules and regulations of the Shoulder."

A hearing was held on the State's first amended motion to revoke probation on October 12, 1984. After hearing testimony from the State's witnesses and the applicant, and brief argument from counsel, the court denied this motion to revoke applicant's probation. The court concluded that the State had failed to meet its burden of proof. Specifically, the court found that

"(i)t [presumably the attempted theft] was never proved it was without effective consent—if you will read your allegations—without permission of the Court [presumably the technical violation of leaving The Shoulder]. Never mentioned without permission of The Shoulder. You failed to meet the proof you alleged in your allegation. It is just not there. Regretfully, I have to deny it." [2]

The State filed another motion to revoke applicant's probation on October 12, 1984, approximately one hour after the court denied its first amended motion to revoke. This second motion again set forth conditions (a) and (k), and proceeded to allege that applicant had violated these conditions by committing an attempted theft from Rose Williams. The second motion contained, as its second allegation, the following:

"The State would further show the said defendant did then and there violate terms and conditions of his probation by: failing to faithfully [f]ollow all guidelines and instructions until successfully discharged or until further order of the Court, to-wit; On April 5, 1984 the Defendant did leave the Shoulder without permission of the Shoulder or the Court, in violation of the rules and regulations of the Shoulder and in violation of the Court's order. Further, the Defendant never returned to the Shoulder nor did he contact the Court or the Probation Officer and was unsuccessfully discharged from the SHoulder (sic) as of April 5, 1984, in violation of the Court's order."

A hearing was held on the state's second motion to revoke applicant's probation on December 19, 1984. Prior to the hearing, applicant filed with the court a "special plea," raising claims of res judicata and "quasi-res judicata," and urging that the allegations contained in the second motion to revoke were the same as those contained in the first amended motion and that the

---

**2.** Although ambiguous, we interpret the trial court's remark at the conclusion of the October 12 hearing to indicate that he was denying revocation solely on the basis of insufficiency of the evidence under the State's pleadings as those pleadings existed at the time of that hearing, and not as an indication that, in general, he found there was no violation of the terms of applicant's probation.

evidence and witnesses were the same as presented at the original hearing on October 12. This motion was denied by the trial court.

Applicant did not testify at the hearing on the second motion to revoke probation. By agreement of all the parties, the court accepted a stipulation that applicant's testimony from the hearing on October 12 would constitute his testimony at the hearing on December 19. Additionally, the entire transcript of the hearing held on October 12 became a part of the record for the hearing held on December 19.

After hearing testimony from the same witnesses who testified at the October 12 hearing,[3] the court found the allegations in the State's second motion to revoke applicant's probation to be true. The court specifically noted that it was considering all the testimony heard at the hearing on December 19, as well as all testimony from the hearing on October 12, in addition to the arguments of counsel at both hearings.

The State relied on *Davenport v. State*, 574 S.W.2d 73 (Tex.Cr.App.1978), during its argument to the trial court at the December 19 hearing on applicant's "special plea" that relitigation of the issues contained in the State's second motion to revoke was barred. While the trial court did not specifically mention *Davenport*, supra, as binding case precedent at the December 19 hearing, his ruling that the State could proceed with the first allegation in the second motion to revoke applicant's probation (attempted theft from Rose Williams) clear-

ly indicates that he followed the rationale of *Davenport*, supra. Although applicant's counsel was not as clear as he might have been in his argument on applicant's "special plea" to the trial court, it is apparent from his remarks that his contention was that the State had failed to meet its burden of proof at the October 12 hearing as to one element of the alleged offense, and thus the State should not be allowed to again litigate the same factual issue.

We have observed a certain tension between our holding in *Davenport*, supra, and our later opinion in *Ex parte Tarver*, 725 S.W.2d 195, 197, n. 1 (Tex.Cr.App. 1986).[4] In *Tarver* we held that where the trial court at a probation revocation hearing makes a specific finding of fact adverse to the State, the State is thereafter precluded by the doctrine of collateral estoppel from obtaining a criminal conviction for any offense requiring proof of the same factual issue earlier resolved against it. *Ex parte Tarver*, supra at 200. However, in *Davenport* the Court had previously held that traditional principles of double jeopardy, under either Art. I, § 14, of the Texas Constitution, or the Fifth Amendment of the United States Constitution, do not prevent a second attempt to revoke probation based upon the same alleged violations of probation as those found "not true" at an earlier probation revocation hearing. *Davenport v. State*, supra at 76. Nothing in *Ex parte Tarver*, supra, purports to overrule this portion of *Davenport*, supra.[5]

---

3. The witnesses at the second hearing were Martha Minnis, from the Adult Probation Department, Patrick O'Shawnessy, a deputy with the Harris County Sheriff's Department, Rose Williams, the complaining witness in the attempted theft allegation, and Lawrence Storey, executive assistant of The Shoulder. Only O'Shawnessy, a fingerprint expert, had not testified at the hearing held on October 12. O'Shawnessy's testimony at the December 19 hearing (that applicant was one and the same person as that named in the judgment in cause number 397,826) was essentially the same as had been given by Sherrie Grounds, also of the Harris County Sheriff's Department, at the October 12 hearing. The testimony of Grounds and of O'Shawnessy was received without objection.

4. See *Ex parte Tarver*, supra at 197–99. See also the criticism of *Davenport v. State*, supra, noted in *Tarver*, supra at 197 n. 1.

5. However, we see no impediment to the application of the doctrine of collateral estoppel, as set forth in *Ex parte Tarver*, supra, to a subsequent probation revocation proceeding, in which the burden of proof is on the State and in which the standard of proof is the same as it was at the prior proceeding. As set forth above, the trial court expressly stated at the conclusion of the hearing on the State's first amended motion to revoke that "(i)t [the attempted theft from Williams] was never proved it was without effective consent." Following the rationale of *Ex parte Tarver*, supra, the jeopardy principle of

■ Although the factual allegations in the first ground for revocation of the first amended motion to revoke probation (the attempted theft from Williams) could not be relitigated at the hearing on the second motion to revoke, under our holding in *Tarver*, supra, nevertheless, there were additional factual allegations in the second ground for revocation contained in the State's second motion to revoke which, if true, would support the revocation of applicant's probation. We hold that collateral estoppel will not bar revocation of probation on the basis of specific facts not before litigated, even if those new facts support revocation for violation of the same condition of probation the State attempted to prove had been violated in the earlier revocation proceeding.

Specifically, the State's second motion to revoke applicant's probation contained certain factual allegations not found in either the first motion or the first amended motion as to the manner and means in which applicant had violated the terms and conditions of his probation and the court's order, as set forth above. Indeed, this is evidenced by the following exchange at the hearing on the State's first amended motion to revoke applicant's probation during the cross examination of Martha Minnis of the Harris County Adult Probation Department:

Q[Applicant's counsel]: "Now, if Mr. Byrd was given permission by the director of that facility to leave, would that be in compliance with their rules and regulations?

\* \* \* \* \* \*

A[Martha Minnis]: If he were given permission by someone over and above the executive assistant, Mr. Storey, to leave, that would be, I suppose, excused; however, the second part of the sentence which you left out, 'until successfully discharged'—they have unsuccessfully discharged him because he never returned to the program.[6]

Q: That is not one of the allegations in the State's pleadings, though; is it?

A: The allegation in the pleading is that he left The Shoulder without permission in violation to rules and regulations, so that is not part of the pleadings.

Q: The discharge provision was not part of the State's pleadings; correct?

A: That's correct."

At the conclusion of the hearing on December 19, the trial court made the following findings:

"The Court also finds it is true that the defendant did violate the terms and conditions of his probation by failing to faithfully follow all guidelines and instructions and to successfully discharge (sic) until further orders of the Court to-wit: ... (the defendant) never returned to The Shoulder or contacted the Court or the probation officer and was unsuccessfully discharged from The shoulder as of April 5, 1984, in violation of the Court's order.

The Court hereby revokes your probation and assess punishment at confinement in the Texas Department of Corrections for a period of 10 years and a fine of $10,000."

Assuming, *arguendo*, that the trial court's comments [7] at the conclusion of the hearing on October 12 indicate that he found that the State had failed to prove that applicant had left The Shoulder without permission of the court or The Shoulder, the State's first amended motion to revoke contained no allegation that appli-

---

collateral estoppel clearly precluded the State from a second attempt to revoke applicant's probation based upon this allegation of the attempted theft from Williams, following the court's adverse ruling at the first hearing. Accordingly, any reference to the attempted theft from the person of Williams should be deleted from the order revoking applicant's probation.

**6.** Other testimony indicates that applicant was unsuccessfully discharged from the rehabilita-

tion program at The Shoulder for "unsatisfactory performance" during the period which he was at the facility because "he did not participate in the activities assigned to him" by Shoulder personnel, in addition to applicant's unauthorized departure from The Shoulder on April 5, 1984, and his continued unauthorized absence from The Shoulder following that departure.

**7.** See note 2 supra.

cant had acted without the permission of his Probation Officer in leaving The Shoulder on April 5, nor that applicant remained absent from The Shoulder without the permission of someone authorized to give permission for such activity, nor that applicant was unsuccessfully discharged from the rehabilitation program at The Shoulder as of April 5, 1984. Certainly the court entered no findings as to any of these matters. There was evidence in the record from the December 19 hearing on the State's second motion to revoke probation to support the trial court's conclusions as to each of these three methods of violating condition (k) of applicant's probation. Thus the issue becomes whether the allegation of additional facts in the second ground for revocation, and proof thereof, will support an order of revocation under that second ground following the State's unsuccessful attempt to revoke on that ground at the earlier hearing.

█ The doctrine of collateral estoppel is of no assistance to applicant here, as the additional factual allegations contained in the second motion to revoke were not before the court for consideration at the October 12 hearing. The doctrine of collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. The doctrine is not to be applied hypertechnically, but requires a reviewing court to examine the record to determine just what issue has been foreclosed between the parties. *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970); *Ex parte Tarver*, supra at 198. The traditional bar against double jeopardy prohibits a second prosecution for the crime itself, while collateral estoppel prevents the State from relitigating certain facts in order to establish the fact of the crime. *Dedrick v. State*, 623 S.W.2d 332, 336 (Tex.Cr.App. 1981); *Ex parte Tarver*, supra at 198. As indicated above, the State's second motion to revoke contained three factual allegations not before the court at the October 12 hearing on the first amended motion to revoke applicant's probation. Thus, the doctrine of collateral estoppel provides no prohibition against revocation of applicant's probation based upon the State's second motion to revoke his probation.

█ There remains the issue as to whether notions of double jeopardy might preclude the State from mounting a second attempt to revoke an individual's probation based upon alleged violations of the same condition of that probation which had been the basis for an earlier motion to revoke, where the later motion to revoke raises additional factual allegations not addressed in the prior motion. We have previously held that traditional notions of double jeopardy under either Article I, § 14, of the Texas Constitution or the Fifth Amendment to the United States Constitution do not prohibit twice subjecting an individual to a revocation of probation proceeding based upon the same alleged probationary violation. *Davenport v. State*, supra at 74–75.

Any reference to the attempted theft from the person of Rose Williams is ordered deleted from the order revoking applicant's probation. All further relief is denied.

ONION, P.J., concurs.

TEAGUE, J., dissents.