Calvin Joseph REYNOLDS, Appellant,

v.

The STATE of Texas.

No. 897–98.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 15, 1999.

**14** ■ 

Robert G. Turner, Houston, for appellant.

Dan McCrory, Assist. DA, Houston, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

McCORMICK, P.J., delivered the opinion of the Court in which MANSFIELD, KELLER, HOLLAND, WOMACK and KEASLER, JJ. joined.

We have exercised our discretionary authority to review the Court of Appeals' 2–1 decision rejecting appellant's claim that the Harris County District Attorney was collaterally estopped from litigating at a motion to suppress hearing in a DWI criminal prosecution the issue of reasonable suspicion to stop appellant's car because the Texas Department of Public Safety had received an adverse ruling on that issue in a prior administrative proceeding to revoke appellant's driver's license for refusal to take a breath test. *Reynolds v. State,* 967 S.W.2d 493 (Tex.App.—Houston [1 st Dist.] 1998). We affirm.

The Court of Appeals issued three opinions. Justice Hedges' lead opinion without elaboration relied on this Court's recent decision in *State v. Brabson.*[1] *Reynolds,* 967 S.W.2d at 494 (Hedges, J.). Apparently believing cases like this implicate federal constitutional double jeopardy principles under *Ashe v. Swenson,*[2] Justice Wilson's concurring opinion joined "the majority opinion's reliance" on *Brabson* and also advanced another reason to reject appel-

---

1. *State v. Brabson,* 976 S.W.2d 182, 183 (Tex. Cr.App.1998) (Dallas County District Attorney not collaterally estopped from litigating at a motion to suppress hearing in a DWI criminal prosecution the issue of probable cause for defendant's arrest when the Texas Department of Public Safety had received an adverse ruling on that issue in a prior administrative proceeding to revoke defendant's driver's license).

2. *Ashe v. Swenson,* 397 U.S. 436, 445–46, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (adopting rule of collateral estoppel as "embodied in the Fifth Amendment guarantee against double jeopardy").

lant's collateral estoppel claim. *Reynolds,* 967 S.W.2d at 495–96 (Wilson, J., concurring).

Justice Cohen's dissenting opinion claimed our decision in *Brabson* on the "parties" or "privity" issue was "questionable" under federal constitutional double jeopardy principles. *Reynolds,* 967 S.W.2d at 497 (Cohen, J., dissenting). Justice Cohen's dissenting opinion also claimed our decision in *State v. Aguilar*[3] rather than our decision in *Brabson* controlled the disposition of this case because, among other things, the current applicable statute "is the same as the statute" in *Aguilar* while *Brabson* was decided under a prior statutory scheme unlike the present one. *Reynolds,* 967 S.W.2d at 496–97 (Cohen, J., dissenting).[4] Justice Cohen's dissenting opinion also claimed *Brabson* and the current applicable statute expressing a clear intent that collateral estoppel principles do not apply in cases like this[5] violate federal constitutional double jeopardy principles under *Ashe* and also conflict with this Court's decision in *Aguilar. Id.*

We granted discretionary review primarily to revisit this Court's majority opinion on original submission in *Brabson* on the "parties" or "privity" issue and to address the claim that *Brabson* and *Aguilar* irreconcilably conflict. We reaffirm the majority opinion on original submission in *Brabson* and we also adopt Judge Womack's concurring opinion on original submission in *Brabson*[6] on the "parties" or "privity" issue.

### I.

■ We initially address the precedential value of *Brabson.* Judge Baird's dissenting opinion to the denial of rehearing in *Brabson* suggested the entire 5–3 majority opinion on original submission in *Brabson* was converted into a plurality opinion when one of the judges who voted with the majority opinion on original submission voted to grant rehearing to reconsider only the "parties" issue. *Brabson,* 976 S.W.2d at 202 (Baird, J., dissenting to denial of reh'g), and at 206–07 (Price, J., dissenting to denial of reh'g).[7]

This does not make the Court's majority opinion on original submission in *Brabson* a plurality opinion. Because a majority of this Court was unwilling to *grant* rehearing to reconsider this Court's 5–3 majority opinion on original submission in *Brabson,* that majority opinion constitutes the decision of the Court and carries precedential weight which the bench and bar are obliged to follow unless the Legislature overturns it or at least five judges on this Court overrule it in whole or in part. See,

---

**3.** *State v. Aguilar,* 947 S.W.2d 257, 261 (Tex. Cr.App.1997).

**4.** However, *Brabson* and *Aguilar* were decided under the same statutory scheme. Compare *Brabson,* 976 S.W.2d at 184, *with, Aguilar,* 947 S.W.2d at 258.

**5.** The current law in refusal to submit a specimen of breath or blood cases expressly provides that the administrative judge's determination "does not preclude litigation of the same or similar facts in a criminal prosecution". See Section 724.048(a)(3), Texas Transportation Code. The current law in failure to pass test for intoxication cases also expressly provides that the administrative judge's determination "does not preclude litigation of the same or similar facts in a criminal prosecution." See Section 524.012(e)(3), Texas Transportation Code.

**6.** *Brabson,* 976 S.W.2d at 186–88 (Womack, J., concurring).

**7.** The Judge, who joined the majority opinion on original submission but who also voted to grant rehearing, voted to grant rehearing only on the "parties" issue. *Brabson,* 976 S.W.2d at 206–07 (Price, J., dissenting to denial of reh'g) (unnecessary to address "parties" issue because there were two other "very sound reasons for the result reached in this case on original submission"). Therefore, even under Judge Baird's view of determining the precedential effect of *Brabson, Brabson* would still be a majority opinion on everything decided in the opinion on original submission except for the "parties" issue.

e.g., *Whitaker v. State*, 977 S.W.2d 595, 602 (Tex.Cr.App.1998) (Price, J., concurring) (each judge on the Court has a responsibility to "observe precedent" until "a majority of this court indicates a willingness to reconsider" it).

## II.

We next address Justice Cohen's claim that *Aguilar* is the current decisional law in cases like this and the claim that *Brabson* and *Aguilar* irreconcilably conflict. See *Reynolds*, 967 S.W.2d at 496–97 (Cohen, J., dissenting); see also *Brabson*, 976 S.W.2d at 202 (Baird, J., dissenting to denial of reh'g). Justice Cohen's dissenting opinion claimed *Aguilar* decided the collateral estoppel bar applies in cases like this. *Reynolds*, 967 S.W.2d at 496 (Cohen, J., dissenting). Noting that our opinion on original submission in *Brabson* did not distinguish or expressly overrule *Aguilar*, Justice Cohen's dissenting opinion doubted "that a Court of Criminal Appeals intent on rapidly abandoning *Aguilar* would not do so expressly." *Id.* The suggestion is that there is some irreconcilable conflict between *Brabson* and *Aguilar* and that *Brabson* should have addressed *Aguilar*. See *Id.*; see also *Brabson*, 976 S.W.2d at 202 (Baird, J., dissenting to denial of reh'g).

There is no conflict between these cases so it was unnecessary in *Brabson* to distinguish, overrule or even mention *Aguilar*. In *Aguilar* it was unnecessary to decide whether the collateral estoppel bar applies in cases like this since the defendant "failed to demonstrate the requisite elements to support his claim of collateral estoppel" anyway. *Aguilar*, 947 S.W.2d at 260.

That part of the Court's opinion in *Aguilar* suggesting the collateral estoppel bar applies in cases like this was *dicta* and was

8. See *Brabson*, 976 S.W.2d at 186 (suggestion in some of this Court's prior cases that the collateral estoppel bar might apply in cases like this was *dicta* and unnecessary to ultimate disposition of those cases).

unnecessary to the decision in that case. *Aguilar*, 947 S.W.2d at 261 ("Court of Appeals was correct in finding that the doctrine of collateral estoppel *might*, in principal (sic), bar the State from relitigating fact issues found in a previous administrative license revocation proceeding"). (Emphasis Supplied). This, like similar *dicta* in other cases,[8] does not constitute a decision that the collateral estoppel bar applies in cases like this, and the bench and bar would err to rely on *Aguilar* for the proposition that it does. *Brabson* is the current decisional law on the issue.

## III.

■ We now revisit the holding in the majority opinion on original submission in *Brabson* on the "parties" or "privity" issue. *Brabson*, 976 S.W.2d at 184. We find it necessary to restate this holding.

Judge Baird's dissenting opinion to the denial of rehearing in *Brabson* claimed we held on original submission in *Brabson* that "the State is not the State." *Brabson*, 976 S.W.2d at 202 (Baird, J., dissenting to denial of reh'g). This presents a classic example of setting up a straw man and then knocking it down.

Consistent with authority from other jurisdictions,[9] the Court's holding on original submission in *Brabson* on the "parties" issue is the "Texas Department of Public Safety and the Dallas County District Attorney are not the same parties" for collateral estoppel purposes. *Brabson*, 976 S.W.2d at 184. Nowhere does the Court's majority opinion on original submission in *Brabson* hold "the State is not the State."

The claim is the Texas Department of Public Safety and the Dallas County District Attorney are the same parties for collateral estoppel purposes because they "are different parts of the executive

9. See *Brabson*, 976 S.W.2d at 200 (McCormick, P.J., concurring to denial of reh'g).

branch of the State of Texas"[10] or because they "are entities 'emanating from the same sovereignty.'"[11] Judge Womack's concurring opinion on original submission in *Brabson* adequately addresses these claims. *Brabson,* 976 S.W.2d at 186–88 (Womack, J., concurring).

Justice Cohen's dissenting opinion in *Reynolds* contains the most constructive criticism of this Court's holding on original submission in *Brabson* on the "parties" issue. *Reynolds,* 967 S.W.2d at 497 (Cohen, J., dissenting). Justice Cohen's dissent claims the Texas Department of Public Safety and a District Attorney are not parties at all, but instead are two governmental entities in the same branch of government representing the same party or client which are the people of the State of Texas. *Id.*

This is analogous to the same private client or party being represented by a private lawyer seeking to relitigate in a subsequent proceeding the same issue that was resolved adversely to the private client in a prior proceeding when the client was represented by another lawyer. Of course when a fact issue is resolved against a private citizen represented by lawyer A in proceeding 1, that same private citizen usually cannot relitigate the same fact issue in proceeding 2 on the basis that the private citizen is now represented by lawyer B.

While there is some merit to the position that the Texas Department of Public Safety and a District Attorney represent the same client which is the citizens of this State, these governmental entities nevertheless should not be considered the same parties for collateral estoppel purposes in cases like this. The citizens of this State have no power, as does a private litigant, to control the course of the litigation by the lawyers representing these governmental entities. These lawyers exercise governmental powers in the public inter-

est. They do not represent any private citizen or private interest as does a private lawyer.

It is well-settled that sometimes the rules that apply to private lawyers representing private citizens do not apply to public lawyers exercising governmental powers in the public interest. For example, it has been held that "when a unit of government is exercising its governmental powers, it is not subject to estoppel." See *State v. Durham,* 860 S.W.2d 63, 67–68 (Tex.1993) (State in its sovereign capacity, unlike ordinary litigants, not subject to defense of estoppel); *Hardman v. State,* 614 S.W.2d 123, 128 (Tex.Cr.App.1981).

In addition, it is important to note that collateral estoppel principles originally were a product of civil litigation developed under the common law and that collateral estoppel issues usually arise between *private* litigants in civil cases. See *Ashe,* 90 S.Ct. at 1204 (Burger, C.J., dissenting). Collateral estoppel becomes a "strange mutant as it is transformed to control" in criminal cases. See *Ashe,* 90 S.Ct. at 1204–05 (Burger, C.J., dissenting).

For example, in practice traditional collateral estoppel principles have not applied with equal force to both sides in criminal cases. There are those who complain that traditional collateral estoppel principles should be strictly applied to the "State" in cases like this but these principles should *not apply* to the other side. See *Brabson,* 976 S.W.2d at 190–96 (Baird, J., dissenting). In other words, the claim seems to be that collateral estoppel principles should be "mutated" into a one-way street that benefits only criminal defendants. See *id.*

But traditional collateral estoppel principles are supposed to work for the benefit of or apply equally to both sides in a lawsuit. See *Ashe,* 90 S.Ct. at 1194 (when "an issue of ultimate fact has once been determined by a valid and final judgment

---

10. See *Reynolds,* 967 S.W.2d at 497 (Cohen, J., dissenting).

11. See *Brabson,* 976 S.W.2d at 192 (Baird, J., dissenting).

that issue cannot again be litigated between the *same parties* in any future lawsuit"). (Emphasis Supplied). *Ashe* adopted a constitutional rule that literally applies to both parties or that does not constitutionally prevent its application to both parties. *Id. Ashe* does not literally say collateral estoppel principles apply in criminal cases but only for the benefit of one side.

No one would seriously argue that had the Texas Department of Public Safety won on the issue of reasonable suspicion to stop appellant's car in the administrative proceeding to revoke appellant's driver's license, then collateral estoppel principles would prevent appellant from relitigating that issue against the Harris County District Attorney in the subsequent criminal prosecution. See *Ashe*, 90 S.Ct. at 1205 (Burger, C.J., dissenting) (courts that have applied collateral estoppel principles to criminal actions would not apply it to both parties). However, there is nothing in *Ashe* or double jeopardy jurisprudence which would foreclose the District Attorney from taking and prevailing on such a position were we to apply traditional collateral estoppel principles to criminal cases.

And, no one would seriously argue that had the prosecution won in the first criminal prosecution in *Ashe*, then collateral estoppel principles would have precluded the defendant from relitigating the issue of identity in a subsequent criminal prosecution for robbing a different poker player. See *Ashe*, 90 S.Ct. at 1191, 1195 (defendant criminally prosecuted for robbery of one of six poker players after having been acquitted of robbery of one of the other poker players). There is nothing in *Ashe* or double jeopardy jurisprudence which would have precluded this from happening. Arguably there is nothing in any of the other provisions of the Constitution which would have precluded this from happening

since the defendant would have received an adverse jury finding on the issue of his identity in the first trial. We nevertheless believe such a position would be somewhat extreme and would not prevail.

The point of this discussion is that traditional collateral estoppel principles applicable to civil cases are somewhat relaxed and are not entirely applicable to criminal cases. This is another reason why, consistent with authority from other jurisdictions, it is appropriate to hold the Texas Department of Public Safety and a District Attorney are not the same "parties" for collateral estoppel purposes in cases like this. In *Brabson*, no one claimed the Dallas County District Attorney had an opportunity to litigate the probable cause issue in the administrative license revocation proceeding.

### IV.

We now address whether our holding on original submission in *Brabson* on the "parties" issue and whether current Texas statutes [12] expressly providing that collateral estoppel principles do not apply in cases like this violate federal constitutional double jeopardy principles. Justice Cohen's dissenting opinion in *Reynolds* claimed our holding on original submission in *Brabson* on the "parties" issue is "questionable" under the United States Supreme Court's decision in *Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 1188–89, 25 L.Ed.2d 435 (1970). *Reynolds*, 967 S.W.2d at 497 (Cohen, J., dissenting).

We disagree. *Waller* held, as a matter of federal constitutional law, that a defendant could not under the "dual sovereignty" doctrine be criminally prosecuted twice "for the same alleged crime" in a municipal and then in a state court. *Waller*, 90 S.Ct. at 1186–88. *Waller* does not apply here because this case does not involve a defendant being criminally prosecuted twice for

---

**12.** Section 724.048(a)(3), Texas Transportation Code; Section 524.012(e)(3), Texas Transportation Code.

the same offense. A license revocation administrative proceeding is a civil proceeding, not a criminal prosecution. We are not required to follow *Waller* in cases like this. See also *Brabson*, 976 S.W.2d at 188 (Womack, J., concurring) (federal authority may be authoritative as to privity of federal agencies but it has no authority over the question of privity among state agencies).

Justice Cohen's dissenting opinion also claimed *Brabson* and current Texas statutes expressly providing that collateral estoppel principles do not apply in cases like this violate double jeopardy principles under *Ashe* and conflict with what this Court "decided" in *Aguilar*. *Reynolds*, 967 S.W.2d at 497 (Cohen, J., dissenting). Justice Cohen's dissenting opinion claimed *Aguilar* decided that cases like this implicate federal constitutional collateral estoppel principles under *Ashe* which the Legislature cannot legislate away. *Reynolds*, 967 S.W.2d at 497 (Cohen, J., dissenting) (characterizing *Aguilar* as dealing with collateral estoppel principles under the double jeopardy clause which the Legislature is constitutionally prohibited from declaring inapplicable). For the reasons already discussed, any *suggestion* in *Aguilar* that federal constitutional collateral estoppel principles apply in cases like this was *dicta.*

■ The majority opinion on original submission in *Brabson* carefully pointed out that cases like this do not implicate the rule of collateral estoppel as "embodied in the Fifth Amendment guarantee against double jeopardy." *Brabson*, 976 S.W.2d at 183 fn. 2.[13] The Fifth Amendment guarantee against double jeopardy which is enforceable against the states through the Fourteenth Amendment[14] protects against

a second prosecution for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); see also *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997) (double jeopardy protects against "multiple criminal punishments" for the "same offense"); *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556, 568 (1993) (double jeopardy also protects against "successive prosecutions" for the "same criminal offense").

■ Since *Ashe's* rule of collateral estoppel is a component of federal constitutional double jeopardy jurisprudence, then, under principles of federalism, this rule applies to the states *only* in these types of cases that implicate these essential protections of the Fifth Amendment's double jeopardy clause. See *Showery v. Samaniego*, 814 F.2d 200, 203–04 (5th Cir.1987) (collateral estoppel does not rise to the level of a constitutional requirement "apart from the double jeopardy clause" and declining to find the collateral estoppel doctrine cognizable as a constitutional claim apart from those claims recognized under the double jeopardy clause). This also means *Ashe* prohibits state legislatures from legislating away the rule of collateral estoppel as "embodied in the Fifth Amendment guarantee against double jeopardy" only in these types of cases.

In all other types of cases state legislatures are free to legislate any way they want. See, e.g., Article 1, Section 2, Tex. Const. (providing the people with the fundamental constitutional right to self-government). *Ashe* did not announce some

---

13. This decision was *necessary* to the majority holding on original submission in *Brabson* because if cases like this implicate federal constitutional collateral estoppel principles, then we probably would have been required under *Waller* to hold the Texas Department of Public Safety and the Dallas County District Attorney were the same "parties."

14. See *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 2062–63, 23 L.Ed.2d 707 (1969) (making the double jeopardy clause of Fifth Amendment applicable to states through due process clause of Fourteenth Amendment).

free-standing all encompassing collateral estoppel constitutional principle apart from double jeopardy principles that is immune from the legislative process. See *Showery,* 814 F.2d at 203–04.

■ Cases like this do not implicate *Ashe* because they are not "successive criminal prosecution" cases[15] or "multiple criminal punishment" cases.[16] Therefore, *Ashe* does not prohibit our Legislature from expressly providing that the determination of an administrative judge in a civil administrative proceeding to revoke a person's driver's license "does not preclude litigation of the same or similar facts in a criminal prosecution." See Section 724.048(a)(3), Texas Transportation Code.

In *Ex parte Tarver,* this Court decided a district attorney was collaterally estopped from relitigating in a criminal prosecution a fact issue that previously had been resolved adversely to the *same* district attorney in a probation revocation proceeding. *Tarver,* · 725 S.W.2d at 195, 200 (Tex.Cr. App.1986). *Tarver* rejected the claim that the case involved multiple punishments for the same offense under double jeopardy principles. *Tarver,* 725 S.W.2d at 197. However, relying on the United States Supreme Court's decision in *Swisher v. Brady, Tarver* decided the "narrow" circumstances of that case implicated another risk "the Double Jeopardy clauses (sic) protects against." *Tarver,* 725 S.W.2d at

200 citing *Swisher v. Brady,* 438 U.S. 204, 98 S.Ct. 2699, 2707, 57 L.Ed.2d 705 (1978).

In *Swisher* the United States Supreme Court rejected the juvenile defendants' claims that a Master's initial findings and recommendations favorable to the juveniles on whether they committed delinquent conduct could not under a Maryland rule of procedure later be challenged by the State in another proceeding before the Juvenile Court Judge. *Swisher,* 98 S.Ct. at 2702–03, 2708. For various reasons the Supreme Court decided jeopardy did not attach in the initial proceeding before the Master which generated the favorable findings to the juveniles. *Id.;* compare *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 1781–87, 44 L.Ed.2d 346 (1975) (jeopardy attached in Juvenile Court proceeding because it was "essentially criminal" in nature; therefore, juvenile was twice placed in jeopardy when, after the adjudicatory hearing in the Juvenile Court proceeding on charge of delinquent conduct, he was transferred to adult court, tried and convicted for same conduct).

■ Therefore, *Tarver* apparently decided jeopardy attached in the probation revocation proceeding because the probation revocation proceeding was close enough to a criminal prosecution or was "essentially criminal." See *Breed,* 95 S.Ct. at 1785 (risk to which double jeopardy clause refers not present in proceedings that are not "essentially criminal").[17] Oth-

---

15. The license revocation administrative proceeding was a civil proceeding, not a criminal prosecution.

16. See *Ex parte Tharp,* 935 S.W.2d 157, 161 (Tex.Cr.App.1996) (administrative suspension of driver's license is not criminal "punishment" for double jeopardy purposes); *State v. Ratliff,* 304 Or. 254, 744 P.2d 247, 248 (1987) (no constitutional basis exists for double jeopardy challenge in cases like this because no criminal sanctions are imposed as a consequence of first proceeding).

17. Before *Tarver* was decided this Court had held a probation revocation proceeding is not a "criminal prosecution" or is not "essentially criminal" for double jeopardy purposes because it is "administrative in nature." *Daven-*

*port v. State,* 574 S.W.2d 73, 75 (Tex.Cr.App. 1978); see also *Chambers v. State,* 700 S.W.2d 597, 598–99 (Tex.Cr.App.1985). *Chambers* and *Davenport* apparently were overruled *sub silentio* in *Tarver.* See *Tarver,* 725 S.W.2d at 197 fn. 1; *Ex parte Byrd,* 752 S.W.2d 559, 562 (Tex.Cr.App.1988).

*Tarver* is inconsistent with Fifth Circuit case law which based on *Breed* holds "the double jeopardy clause does not apply to parole and probation revocation proceedings" because they are not "essentially criminal." *Showery,* 814 F.2d at 202; see also *Stringer v. Williams,* 161 F.3d 259, 262 (5 th Cir.1998). *Showery* erroneously characterized *Tarver* as "extending state constitutional guarantees beyond those afforded by the federal Constitution." *Showery,* 814 F.2d at 204; see also *Stringer,*

erwise, *Tarver* could not have decided the "narrow" circumstances of that case implicated "one of the risks" against which the double jeopardy clause protects and it could not have applied federal constitutional collateral estoppel principles under *Ashe*.[18] *Tarver*, 725 S.W.2d at 200; see *Showery*, 814 F.2d at 202–04.

We can easily distinguish *Tarver* from the present case. A license revocation administrative proceeding is nothing like a probation revocation proceeding. It is not a "criminal prosecution" and it is not "essentially criminal." See *Breed*, 95 S.Ct. at 1785 (risk to which double jeopardy clause refers not present in proceedings that are not "essentially criminal"); *Tharp*, 935 S.W.2d at 161 (administrative revocation of driver's license not criminal "punishment" for double jeopardy purposes); *Showery*, 814 F.2d at 202–03; *Burrows v. Texas Dept. Of Public Safety*, 740 S.W.2d 19, 20–21 (Tex.App.—Dallas 1987, no pet.) (license revocation administrative proceedings are essentially civil in nature and not criminal prosecutions).

■ Finally, assuming a license revocation administrative proceeding is "essentially criminal" so as to qualify as a "criminal prosecution" for double jeopardy purposes, *Ashe* still did not prohibit the district attorney from litigating at the motion to suppress hearing in the DWI criminal prosecution the issue of reasonable suspicion to stop appellant's car. The current law requiring the Texas Department of Public Safety to reinstate the person's license upon, among other things, a finding by the administrative judge that there existed no "reasonable suspicion or probable cause to stop or arrest the person"[19] does not amount to an "acquittal" or a finding that appellant did not commit the DWI offense. See *Ashe*, 90 S.Ct. at

161 F.3d at 263. However, *Tarver* was decided as a matter of federal constitutional law. *Tarver*, 725 S.W.2d at 200.

Of course, we are not required to follow Fifth Circuit federal constitutional interpretations. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 846, 122 L.Ed.2d 180 (1993) (Thomas, J., concurring) (in our federal system, a state trial court's interpretation of federal law is no less authoritative than that of the federal court of appeals in whose circuit the trial court is located). However, the reader might note that though the defendant in *Tarver* won in state court, he would have lost in federal court for failure to state a federal constitutional claim. See *Showery*, 814 F.2d at 203–04.

**18.** Common-law "administrative collateral estoppel" principles support the result in *Tarver* making it unnecessary to resort to federal constitutional collateral estoppel principles to support it. *Tarver*, 725 S.W.2d at 195, 200; see also Brabson, 976 S.W.2d at 186 (*Brabson* consistent with "narrowness" of holding in *Tarver* because in *Tarver*, the parties were the same, the ultimate fact issue in the probation revocation proceeding and the subsequent criminal prosecution was the same, the ultimate fact issue was resolved adversely to the "State" in the probation revocation proceeding, and that fact issue was "properly before" the trial court in the probation revocation proceeding). A criminal prosecution in cases like *Tarver* can violate common-law "adminis-

trative collateral estoppel" principles without also violating federal constitutional collateral estoppel principles under *Ashe*. See *Brabson*, 976 S.W.2d at 186; *Showery*, 814 F.2d at 202–03.

The majority opinion on original submission in *Brabson* relied on *Tarver* for stating this Court had adopted for criminal cases the common-law doctrine of "administrative collateral estoppel." *Brabson*, 976 S.W.2d at 183. However, *Tarver* was decided as a matter of federal constitutional law. This raises the question of whether this Court has ever adopted this common-law doctrine for criminal cases and whether collateral estoppel principles apply to criminal cases outside the double jeopardy context. See *Ashe*, 90 S.Ct. at 1203–05 (Burger, C.J., dissenting) (questioning whether collateral estoppel principles should apply to criminal cases); *Brabson*, 976 S.W.2d at 207 (Price, J., dissenting to denial of reh'g) (a rule that collateral estoppel principles "will simply not be used as a bar" in these types of cases is "far more sound" than deciding that a district attorney and the Texas Department of Public Safety are not the same "parties" for collateral estoppel purposes). We did not grant discretionary review in this case to reexamine this aspect of the *Brabson* decision.

**19.** See Section 724.043(b), Texas Transportation Code; Section 724.042(1), Texas Transportation Code.

1195–96 (jury's general "not guilty" verdict in first prosecution for robbery of poker player A on basis that defendant was not one of the robbers effectively was an "acquittal" on charge in second prosecution that defendant robbed poker player B);[20] *Tarver,* 725 S.W.2d at 196, 200 (defendant effectively "acquitted" in probation revocation proceeding of same offense which was subject of the subsequent criminal prosecution).[21] This is fatal to appellant's federal constitutional collateral estoppel claim under *Ashe.* See *Pearce,* 89 S.Ct. at 2076 (double jeopardy protects against a second prosecution for the same offense after "acquittal").

## V.

■ We address some of the concerns raised in Judge Meyers' dissenting opinion to the denial of rehearing in *Brabson. Brabson,* 976 S.W.2d at 206 (Meyers, J., dissenting to denial of reh'g); see also *Brabson,* 976 S.W.2d at 207 (Price, J., dissenting to denial of reh'g) (adopting these concerns). Judge Meyers' dissenting opinion to the denial of rehearing in *Brabson* claims our holding on original submission in *Brabson* on the "parties" issue will subject criminal defendants to successive criminal prosecutions for the same offense by different district attorneys and cause the Attorney General to obtain new findings in federal habeas corpus proceedings because the Attorney General "is a different party than the District Attorney." *Id.*

We disagree. The former clearly is prohibited by federal constitutional double

jeopardy principles no matter who the "parties" are to the proceedings. And federal courts are mandated by federal statutes to defer to state court findings in federal habeas corpus proceedings. Federal courts do not defer to these findings in these proceedings based on collateral estoppel principles.

The judgment of the Court of Appeals is affirmed.

MEYERS, J., filed a dissenting opinion in which JOHNSON, J., joined.

PRICE, J., filed a dissenting opinion.

MEYERS, J., delivered a dissenting opinion in which JOHNSON, J., joined.

In other contexts we have acknowledged the confusion and difficulty engendered when we have used the same term to apply to different situations. *See Leday v. State,* 983 S.W.2d 713, 715–16 (Tex.Crim.App. 1998). Our casual use of the term "collateral estoppel," without fully explaining whether we are referring to constitutional double jeopardy protections or simply to common-law principles, has led to just this sort of dilemma. I write separately to acknowledge this ambiguity in our case law and because the majority's opinion, in its haste to defend its "parties" analysis set forth in *State v. Brabson,* 976 S.W.2d 182 (Tex.Crim.App.1998), further clutters the area of collateral estoppel by reaching issues unnecessary to the resolution of this case.

**20.** In *Ashe,* 90 S.Ct. at 1195–96, the jury effectively "decided" the defendant did not commit the offense for which he was being prosecuted in the subsequent prosecution:

"After the first jury had acquitted the petitioner of robbing [poker player A], Missouri could certainly not have brought him to trial again upon that charge. Once a jury had determined upon conflicting testimony that there was at least a reasonable doubt that the petitioner was one of the robbers, the State could not present the same or different identification evidence in a second prosecution for the robbery of [poker player A] in the hope that a different jury might

find that evidence more convincing. The situation is no constitutionally different here, even though the second trial related to [poker player B] of the same robbery. *For the name of the victim, in the circumstances of this case, had no bearing whatever upon the issue of whether the petitioner was one of the robbers."* (Emphasis Supplied).

**21.** In *Tarver,* 725 S.W.2d at 196, 200, the trial court in the probation revocation proceeding decided the defendant did not commit the offense for which he was being prosecuted in the subsequent prosecution.

The parties, and the Court of Appeals, have glossed over the preliminary issue that ought to be addressed in all cases in which a claim of "collateral estoppel" is raised. That is, what *type* of collateral estoppel is at issue. Does appellant seek application of the constitutional doctrine of collateral estoppel inherent in either the Double · Jeopardy Clause or, arguably, within another constitutional provision such as the Due Process Clause, or does he rely on common-law principles. On the one hand, the Court of Appeals' lead opinion rested exclusively on this Court's recent decision in *State v. Brabson, supra,* in holding that the State was "not collaterally estopped from relitigating the issue of reasonable suspicion to stop at the suppression hearing in the criminal prosecution." *Reynolds v. State,* 967 S.W.2d 493, 494 (Tex.App.—Houston [1st Dist.] 1998). The *Brabson* case, of course, expressly stated that it was decided on common-law principles. *Brabson,* 976 S.W.2d at 183. Nevertheless, both Justice Wilson's concurring opinion and Justice Cohen's dissenting opinion based their conclusions on double jeopardy grounds. *See Reynolds,* 967 S.W.2d at 495 (Wilson, J., concurring) (arguing that probable cause is not an "issue of ultimate fact" so as to merit constitutional protection); *Id.* at 496–97 (Cohen, J., dissenting) (questioning whether legislature invaded province of judiciary when it provided that findings of administrative law judge would not preclude a criminal prosecution and arguing that *Brabson*'s "parties" analysis was suspect under constitutional double jeopardy precedent).

For his part, appellant argues, through his reliance on *State v. Aguilar,* 947 S.W.2d 257 (Tex.Crim.App.1997), that the constitutional protections of the Double Jeopardy Clause apply to this case. We should not address this issue in the first instance. Instead, the Court of Appeals should be given the first opportunity to examine whether the Double Jeopardy Clause is implicated in this case. This preliminary issue has been consistently overlooked in this context, consequently leading to the impression that the analytical principles of constitutional collateral estoppel and of common-law collateral estoppel are indistinct. These doctrines, however, should be subject to separate modes of analysis. Therefore, the judgment of the Court of Appeals should be vacated and the case remanded so that it may first address what type of collateral estoppel is presented here and the merits as to that type. If appellant has presented a question of constitutional collateral estoppel, the Court of Appeals must resolve whether jeopardy attached at appellant's initial administrative license revocation hearing. As the following discussion indicates, only if the Court of Appeals answers that question in the affirmative may appellant take advantage of the doctrine of constitutional collateral estoppel.

## I.

Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). Although originally fashioned as a means to conserve judicial resources in civil litigation, the doctrine of collateral estoppel has been applied in its common-law form to federal criminal cases since the early part of this century. *See United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916) (applying *res judicata* for first time in federal criminal case).[1] When applied in a criminal case, collateral estoppel may bar the State from litigating a factual issue in a criminal pros-

---

1. In response to the government's argument in *Oppenheimer* that the doctrine of *res judicata* did not exist for criminal cases except as embodied in the Fifth Amendment, Justice Holmes remarked, "It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt." *Oppenheimer,* 242 U.S. at 87, 37 S.Ct. at 69.

ecution when it already received an adverse ruling on the same issue in a previous judgment. *See, e.g., Ex parte Tarver,* 725 S.W.2d 195, 200 (Tex.Crim.App.1986) (holding State was barred by collateral estoppel from litigating fact issues in criminal prosecution found adversely to it in previous probation revocation proceeding).

Fifty-four years after the *Oppenheimer* decision, the United States Supreme Court first held that the rule of collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe,* 397 U.S. at 445–46, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469. In *Ashe,* three or four armed, masked perpetrators broke into a home and robbed six men who were playing poker. *Id.,* 397 U.S. at 437–39, 90 S.Ct. at 1191–92. The defendant was acquitted at his first trial for the robbery of one of the victims, but was subsequently convicted in a second trial for the robbery of another poker player. *Id.* At both trials, the evidence that an armed robbery had occurred was "unassailable" and the Supreme Court determined that the "single rationally conceivable issue in dispute before the jury was whether the [defendant] had been one of the robbers." *Id.,* 397 U.S. at 438 & 445, 90 S.Ct. at 1192 & 1195. In reversing the defendant's conviction, the Court held that the State was prohibited by the Double Jeopardy Clause from litigating the issue of identity at the second trial after it had obtained a previous judgment acquitting the defendant based on that same issue. *Id.,* 397 U.S. at 445, 90 S.Ct. at 1195. The Court concluded that, whatever else it may do, the Fifth Amendment guarantee against double jeopardy "surely protects a man who has been acquitted from having to 'run the gantlet [sic]' a second time." *Id.,* 397 U.S. at 446, 90 S.Ct. at 1195 (quoting *Green v. United States,* 355 U.S. 184, 190, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957)).

For our purposes, *Ashe* is significant for at least two reasons. First, the *Ashe* decision was the first to constitutionalize col-

lateral estoppel principles. As an "ingredient" of the Double Jeopardy Clause, constitutional collateral estoppel is fully applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Ashe,* 397 U.S. at 442–43, 90 S.Ct. at 1193–94 (citing *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)). Second, *Ashe* suggests that collateral estoppel has no independent constitutional basis outside the scope of the Double Jeopardy Clause. *Ashe,* 397 U.S. at 445, n. 10, 90 S.Ct. at 1195, n. 10 (indicating constitutional collateral estoppel only applies insofar as necessary to safeguard against "the potential for unfair and abusive reprosecutions"); *see also Showery v. Samaniego,* 814 F.2d 200, 203 (5 th Cir.1987) (interpreting *Ashe* as foreclosing any due process basis for collateral estoppel independent of Double Jeopardy Clause). In reaching its conclusion, the *Ashe* Court was confronted with its previous decision in *Hoag v. New Jersey,* 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958), in which it analyzed almost identical facts under Fourteenth Amendment substantive due process. Although *Hoag* did not reach the collateral estoppel issue, the Court there expressed "grave doubts whether collateral estoppel can be regarded as a constitutional requirement." *Hoag,* 356 U.S. at 471, 78 S.Ct. at 829. Justifying the different result reached in *Ashe,* the Court explained that it had since decided *Benton v. Maryland, supra,* which applied the Double Jeopardy Clause to the states and consequently lifted the Court's analysis out of a strictly due process paradigm. *Ashe,* 397 U.S. at 442, 90 S.Ct. at 1193–94 ("The question is no longer whether collateral estoppel is a requirement of due process, but whether it is a part of the Fifth Amendment's guarantee against double jeopardy"). It therefore seems clear that the *constitutional* protections of collateral estoppel are coterminous with the Fifth Amendment's Double Jeopardy Clause.[2]

---

**2.** There are some who argue that there may

be an independent basis for collateral estop-

If there is no independent constitutional basis for collateral estoppel outside of the Double Jeopardy Clause, the next step is to determine whether a claim of collateral estoppel falls within the scope of the Clause. The Fifth Amendment to the Constitution of the United States provides, in relevant part: "nor shall any person be subject for the same offence to be twice put in jeopardy of life and limb. . . ." It is axiomatic that the Double Jeopardy Clause only applies in situations where an individual is placed in jeopardy *twice*.[3] But it has not always been equally as apparent exactly what being placed in "jeopardy" might entail so as to trigger the protections of the constitutional provision. Nevertheless, the attachment of "jeopardy" is predicate to any constitutional analysis involving multiple prosecutions:

> It is true that we have disparaged 'rigid, mechanical' rules in the interpretation of the Double Jeopardy Clause. However, we also observed in [*Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425 (1973)] that 'the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial.' Implicit in the latter statement is the premise that the 'constitu-

tional policies underpinning the Fifth Amendment's guarantee' are not implicated before that point in the proceedings at which 'jeopardy attaches.' *Serfass v. United States*, 420 U.S. 377, 390–91, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265 (1975) (citations omitted); *see also Ex parte Robinson*, 641 S.W.2d 552, 556 (Tex. Crim.App.1982) ("Insofar as the doctrine of collateral estoppel on which [the defendant] relies is but a corollary of the Double Jeopardy Clause, the fact that he has not been put in jeopardy has significance"). *Therefore principles of constitutional collateral estoppel will only apply to the case at bar if jeopardy attached to the initial administrative license revocation hearing.*

To invoke double jeopardy protection, the initial proceeding involved need not necessarily be a criminal "prosecution," but it must be "essentially criminal" in nature. *Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) (citing *Helvering v. Mitchell*, 303 U.S. 391, 398, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938)). This Court has yet to fully analyze whether jeopardy attaches at an administrative license revocation ("ALR") hearing.[4] *See, e.g., State v. Aguilar*, 947 S.W.2d 257, 259–60 (Tex.Crim.App.1997) (analyzing applica-

pel in the Due Process Clause. *See, e.g., Showery*, 814 F.2d at 204 (Goldberg, J., dissenting) ("In deciding that collateral estoppel was constitutionally required under the Double Jeopardy Clause . . . the Supreme Court did *not* foreclose the possibility that collateral estoppel might also be constitutionally required in a criminal context as a 'fundamental principle of ordered liberty' or as a principle of 'fundamental fairness' "); Note, *The Due Process Roots of Criminal Collateral Estoppel*, 109 HARV. L.REV. 1729, 1740–45 (1996).

3. The Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Appellant's collateral estoppel claim must lie, if at all, among the first of these three protections. *See Ashe*, 397 U.S. at 446, 90 S.Ct. at 1195 (noting Ashe had

been *acquitted* based on same issue subsequently relitigated).

4. *This Court has held that the revocation of a defendant's drivers license does not constitute* "punishment" for double jeopardy purposes so as to preclude a subsequent DWI prosecution. *Tharp*, 935 S.W.2d at 161; *see also Voisinet v. State*, 935 S.W.2d 424 (Tex.Crim. App.1996). *Tharp*, however, is not dispositive as to whether jeopardy attached at the ALR hearing. That opinion dealt with the double jeopardy issue in the context of multiple "punishments", *Tharp*, 935 S.W.2d at 159, whereas here we are concerned with multiple "prosecutions." *See supra* p. 25 n. 3. Specifically, *Tharp* involved a situation where the defendant actually had his license revoked and then was subjected to a subsequent criminal trial. Appellant, on the other hand, did not have his license revoked pursuant to a favorable finding by the administrative law judge. He now seeks to have collateral estoppel applied based on those findings.

tion of collateral estoppel, purportedly in constitutional context, without initially determining whether jeopardy attached at ALR proceeding); *State v. Brabson*, 976 S.W.2d 182, 183 n. 2 (Tex.Crim.App.1998) (concluding, without discussion, that only common-law collateral estoppel applied in ALR hearing). Nevertheless, as the preceding review of Supreme Court cases indicates, constitutional principles of collateral estoppel would only be triggered if jeopardy attached at the ALR hearing.

## II.

The constitutional principles announced in *Ashe* did not entirely swallow the common-law rule. In fact, when the protections of the Double Jeopardy Clause do not apply to a given case, a criminal defendant may still attempt to avail himself of the *common-law* doctrine of collateral estoppel. Texas courts have adopted the common-law doctrine and have applied it in criminal contexts outside of those where "jeopardy" might attach, albeit those common-law principles do not rise to the level of a constitutional imperative. *See Ex parte Tarver*, 725 S.W.2d 195 (Tex.Crim. App.1986); *State v. Brabson*, 976 S.W.2d 182, 183 (Tex.Crim.App.1998).[5]

There is some controversy, however, over whether *Tarver* should be interpreted as construing the Double Jeopardy Clause of the Fifth Amendment or merely as applying common-law collateral estoppel to a criminal case. *See, e.g., State v. Smiley*, 943 S.W.2d 156 (Tex.App.—Amarillo 1997, no pet.) (per curiam) (yielding three separate opinions interpreting *Tarver* ). In *Tarver* we held that the State was collaterally estopped from litigating a fact issue in a criminal prosecution after it had received

an adverse judgment on the same issue in a previous probation revocation hearing. *Tarver*, 725 S.W.2d at 200. *Tarver* was, admittedly, somewhat ambiguous as to whether it was applying constitutional principles of collateral estoppel or applying the common-law doctrine in the criminal context. For instance, we initially appeared to reject Tarver's double jeopardy claim by concluding that he was faced with neither successive prosecutions nor successive punishments. *Id.* at 197. As explained above, this conclusion should have been fatal to any double jeopardy challenge. The Court then went on to apply the "corollary doctrine of collateral estoppel." *Id.* at 197–200. In so doing, it seemed to revive the constitutional issue by incorporating fragments of the Supreme Court's double jeopardy jurisprudence. *See id.* at 198–99 (citing *Breed, supra*, for the proposition that collateral estoppel may apply even when the previous proceeding is deemed "civil" by the legislature, and applying parts of the *Ashe* test). In making its conclusion the *Tarver* Court also stated:

> To allow such a second attempt [at proving facts necessary to a finding of guilt] would lead to one of the risks the Double Jeopardy clauses [sic] protects against: "The Double Jeopardy Clause also precludes the prosecutor from 'enhanc[ing] the risk that an innocent defendant may be convicted,' by taking the question of guilt to a series of persons or groups empowered to make binding determinations."

*Id.* at 200 (quoting *Swisher v. Brady*, 438 U.S. 204, 216, 98 S.Ct. 2699, 2707, 57

---

5. The majority today reaffirms *Brabson* as valid precedent. *Ante* at 15–16. But the majority's reasoning on this point is somewhat disingenuous. In one breath it reaffirms *Brabson*, *ante*, at 15, which was expressly based on common-law principles, and then expends a great deal of energy attacking the application of "civil" collateral estoppel to criminal cases. *Ante*, at 17–18. Admittedly, common-law collateral estoppel may at first seem to be a

strange animal when applied in a criminal case inasmuch as the doctrine seems to run as a "one-way street" in favor of the defendant. *See ante*, at 17–18. But I am not as troubled as the majority seems to be that the defendant's constitutional rights—including the rights to jury trial, confrontation and due process—may force some modifications of the doctrine in the criminal context.

L.Ed.2d 705 (1978)).[6] Each of these points of analysis initially suggest that *Tarver* based its conclusion on the Double Jeopardy Clause.

Nevertheless, there are at least three reasons to instead interpret *Tarver* as construing the common-law doctrine of collateral estoppel.[7] First, subsequent cases have not tended to read *Tarver* as a constitutional opinion. *See, e.g., Ex parte Byrd*, 752 S.W.2d 559, 562 (Tex.Crim.App.1988) (stating *Tarver* did not conflict with one of this Court's previous decisions that held that Double Jeopardy Clause did not prevent second attempt to revoke probation based upon facts found "not true" at previous revocation hearing); *Brabson*, 976 S.W.2d at 183 (citing *Tarver* as adopting common-law doctrine of collateral estoppel); *State v. Nash*, 817 S.W.2d 837, 840–41 (Tex.App.—Amarillo 1991, pet. ref'd) (same); *Manning v. State*, 870 S.W.2d 200, 203 (Tex.App.—Eastland 1994, pet. ref'd) (same); *Ex parte Pipkin*, 935 S.W.2d 213, 215–16 (Tex.App.—Amarillo 1996, no pet.) (same); *Ex parte Serna*, 957 S.W.2d 598, 601–02 (Tex.App.—Fort Worth 1997, no pet.) (same); *Ex parte Gregerman*, 974 S.W.2d 800, 803 (Tex.App.—Houston [14th Dist.] 1998, no pet.) (same); *State v. Ayala*, 981 S.W.2d 474, 477 n. 3 (Tex.App.—El Paso 1998, pet. ref'd) (same); *Showery v. Samaniego*, 814 F.2d 200, 204 (5th Cir. 1987) (indicating *Tarver*'s protections not rooted in federal constitution); *Stringer v. Williams*, 161 F.3d 259, 263 (5th Cir.1998) (stating *Tarver*'s holding was based on state, rather than federal law); *but see* *State v. Aguilar*, 947 S.W.2d 257, 259 (Tex. Crim.App.1997) (citing *Tarver* as constitutional authority).

Second, and more importantly, the reasoning of the *Tarver* opinion itself is most viable when viewed as applying common-law principles. As discussed above, the *Tarver* Court's initial findings that the defendant was subject neither to multiple prosecutions nor multiple punishments precluded the application of the Double Jeopardy Clause. Also, *Tarver* relied heavily on federal common-law precedent, rather than double jeopardy jurisprudence, in crafting its test for "administrative" collateral estoppel. For instance, *Tarver* cited *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966), for the proposition that simply because a prior hearing is "administrative" does not necessarily foreclose the application of collateral estoppel. *Tarver*, 725 S.W.2d at 199. *Utah Construction* had nothing to do with the Double Jeopardy Clause or the criminal law. Rather, that case applied common-law principles to a civil breach of contract action between the Atomic Energy Commission and a private contractor. *Utah Construction*, 384 U.S. at 400–01, 86 S.Ct. at 1549. Moreover, although *Utah Construction* is cited in the paragraph immediately following our discussion of *Breed*, we never sought to determine whether the probation revocation hearing was "essentially criminal" so as to satisfy *Breed*'s requirements for the application

---

6. The majority's position seems to be that *Tarver*'s citation to one of the purposes underlying the Double Jeopardy Clause provides conclusive proof that it is a constitutional opinion. *See ante*, at 20. But the same cited policy of preventing a party from taking a fact issue to multiple factfinders also underlies the common-law doctrine of collateral estoppel.

7. In *Brabson*, this Court cited *Tarver* as adopting "for criminal cases the federal common-law doctrine of 'administrative collateral estoppel.'" *Brabson*, 976 S.W.2d at 183. The majority now cites *Tarver* as applying consti-

tutional double jeopardy principles rather than common-law collateral estoppel. *Ante*, at 21 n. 18. This change of position, which comes with no explanation, is at odds with our subsequent case law and the reasoning of *Tarver* itself. Transforming *Tarver* into a constitutional opinion renders it more vulnerable to question given its relatively weak constitutional underpinnings. I do not wish to be associated with this effort to destabilize *Tarver*'s jurisprudential foundation. In my view, *Tarver* presents the most authoritative word on administrative collateral estoppel in Texas criminal law.

of the Double Jeopardy Clause. *See Tarver*, 725 S.W.2d at 198–200.

Finally, *Tarver* cited various cases from federal courts which applied common-law collateral estoppel to federal criminal cases where jeopardy had not attached. For instance, in footnote 3 of its opinion, the *Tarver* Court cited *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232, 233–34, 93 S.Ct. 489, 491, 34 L.Ed.2d 438 (1972), for the proposition that "one need not be twice placed in jeopardy of criminal punishment in order for collateral estoppel to apply." *Tarver*, 725 S.W.2d at 197 n. 3. That Supreme Court case clearly speaks of federal common-law principles. *See One Lot Emerald Cut Stones*, 409 U.S. at 234–36, 93 S.Ct. at 491–93 (rejecting collateral estoppel claim independent of constitutional double jeopardy claim). For these reasons, *Tarver* is more soundly interpreted as construing common-law, rather than constitutional collateral estoppel.[8]

Perhaps recognizing *Tarver*'s viability, the Legislature has changed the common-law as applied to ALR hearings. Specifically, the applicable portion of the Transportation Code, effective September 1, 1995, provides:

(a) The determination of the department or administrative law judge:

(1) is a civil matter;

(2) is independent of and is not an estoppel as to any matter in issue in an adjudication of a criminal charge arising from the occurrence that is the basis for the suspension or denial; and

(3) does not preclude litigation of the same or similar facts in a criminal prosecution.

TEX. TRANSP. CODE ANN. § 724.048(a) (Vernon 1999).[9] Although we may presume that collateral estoppel may apply where the legislature has not provided otherwise, that presumption is overcome where the Legislature states precisely that collateral estoppel shall not be applied in a given statutory scheme. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108–09, 111 S.Ct. 2166, 2169–70, 115 L.Ed.2d 96 (1991). Here the Texas Legislature has stated in the clearest terms that the presumption in favor of the application of common-law collateral estoppel is not to be applied to the findings made at an ALR hearing. Therefore, if on remand the Court of Appeals determines that constitutional collateral estoppel is not applicable to findings made at an ALR hearing, appellant may not take refuge in the common-law doctrine.

### III.

The Court of Appeals did not reach the question of whether jeopardy attached at appellant's initial ALR hearing. In fact, the lead opinion of the Court of Appeals did not touch at all on appellant's double jeopardy claim. Because this issue was not addressed in the appellate court, the judgment of the Court of Appeals should be vacated and the case remanded so that it may examine in the first instance whether a claim of constitutional collateral estoppel is raised and, if so, whether it applies in this case. Because the majority instead elects to reach the constitutional issues itself, I dissent.

PRICE, J., filed a dissenting opinion.

I dissent. Before explaining why I do so, however, I feel it necessary to explain the circumstances from which this appeal arises. Last year, in *State v. Brabson*, 976

---

**8.** This interpretation of *Tarver* is also consistent with our previous holdings indicating that the nature of probation revocation hearings do not implicate the Double Jeopardy Clause. *See Davenport v. State*, 574 S.W.2d 73 (Tex.Crim.App.1978); *Chambers v. State*, 700 S.W.2d 597 (Tex.Crim.App.1985).

**9.** Of course, this provision has no effect on any claim of constitutional collateral estoppel. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

S.W.2d 182 (Tex.Crim.App.1998), we held that a district attorney was not collaterally estopped from litigating the issue of probable cause for arrest, even though the Department of Public Safety, in a prior administrative license revocation proceeding, had received an adverse ruling on this same issue. We stated that this was so for three reasons: (1) the Texas Department of Public Safety and the Dallas County District Attorney are not the same parties, so that collateral estoppel principles do not preclude the Dallas County District Attorney from litigating the issue of probable cause for appellee's arrest at the suppression hearing in the criminal prosecution;[1] (2) the controlling statute did not authorize the administrative law judge to make a finding on probable cause, so that such an unauthorized finding should not preclude relitigation of the issue;[2] (3) because the issue of probable cause for arrest was not an ultimate fact before the administrative law judge, such a finding should not preclude relitigation of the issue.[3]

The first of these propositions, the so-called "parties theory," was the most suspect. It immediately received criticism from some members of this Court.[4] Soon thereafter, on motion for rehearing, I indicated that I had mistakenly voted for the majority opinion, and that given that opinion's unsupportable proposition as to the parties issue, I should have been shown as concurring only in the result.[5] The dissenters to the original decision again criticized the majority's "parties theory."[6]

All this, however, was only the "tip of the iceberg." While *Brabson*'s "parties theory" has garnered criticism from various members of both the bench[7] and bar,[8] it continues to manifest itself in various Courts of Appeals opinions.[9]

1. *Brabson*, 976 S.W.2d at 184.

2. *Id.*

3. *Id.* at 185.

4. *See id.* at 190 n. 1 (Meyers, J., concurring and dissenting); *id.* at 190–195 (Baird, J., dissenting).

5. *See id.* at 206–207 (Price, J., dissenting to denial of motion for rehearing).

6. *See id.* at 202–203 (Baird, J., dissenting to denial of motion for rehearing); *id.* at 203–206 (Meyers, J., dissenting to denial of motion for rehearing).

7. *See, e.g., Reynolds v. State*, 967 S.W.2d 493, 497 (Tex.App.—Houston [1 st Dist.] 1998, pet. granted) (Cohen, J., dissenting) (stating belief that Texas Department of Public Safety and Dallas County District Attorney are not parties at all, but different parts of executive branch of State of Texas, and that issue is whether State of Texas, rather than District Attorney had opportunity to litigate issue of probable cause, and that State of Texas had notice and motive to aggressively prosecute issue in license revocation proceeding).

8. *See, e.g., Salinas v. State*, 1 S.W.3d 700, 702 (Tex.App.—Amarillo 1999, no pet. h.) (noting that *Brabson* has been criticized in legal literature); *Per Curiam*, Voice for the Defense, July–August 1998 (Vol.27, No. 6), at 16–17.

9. *See, e.g., Salinas*, at 702; *Thomas v. State*, 990 S.W.2d 858, 862 (Tex.App.—Dallas 1999, no pet. h.); *In re State ex rel. Hilbig*, 985 S.W.2d 189, 190 (Tex.App.—San Antonio 1998, no pet.); *Ex Parte Keeler*, 987 S.W.2d 78, 79 n. 1 (Tex.App.—San Antonio 1998, pet. ref'd); *State v. Ayala*, 981 S.W.2d 474, 477 (Tex.App.—El Paso 1998, pet. ref'd); *State v. Anderson*, 974 S.W.2d 193, 195 (Tex.App.—San Antonio 1998, no pet.); *State v. Montgomery*, 972 S.W.2d 872, 874 (Tex.App.—Corpus Christi 1998, no pet.); *Ex parte Richards*, 968 S.W.2d 567, 570 (Tex.App.—Corpus Christi 1998, pet. ref'd); *Ex parte Yates*, 966 S.W.2d 743, 744 n. 1 (Tex.App.-San Antonio 1998, pet. ref'd); *Nordsig v. State*, No. 05–97–01165–CR, 1999 WL 452105 (Tex.App.—Dallas July 6, 1999, no pet. h.) (not designated for publication), 1999 WL 452105, at *2; *Ex parte Davis*, No. 04–98–00758–CR, 1999 WL 125445 (Tex.App.—San Antonio March 10, 1999, no pet. h.) (not designated for publication), 1999 WL 125445, at *1; *Ex parte Krueger*, Nos. 04–98–00226–CR, 04–98–00227–CR & 04–98–00228–CR, 1999 WL 16032 (Tex.App.—San Antonio January 13, 1999) (not designated for publication, no pet.), 1999 WL 16032, at *2 n. 1; *Pourassef v. State*, No. 14–97–00324–CR, 1998 WL 879695 (Tex.App.—Houston [14 th Dist.] December 17, 1998, pet. ref'd) (not designated for publication), 1998

Now under siege, the majority has taken it upon itself to once again attempt to rationalize this "parties theory". Ironically, this attempt only underlines the irrationality of that "theory." What is most notable is the various successive reasons that have been given for the proposition that the District Attorney and the Department of Public Safety are not the same parties: (1) on original submission, this "theory" was asserted with no authority whatsoever, except a footnote citing inapposite case law and making the circular argument that the District Attorney had no opportunity to litigate the issue of probable cause in the administrative proceeding;[10] (2) on rehearing, the "theory" was rationalized on the bases of (a) public policy;[11] (b) being consistent with the law in other jurisdictions;[12] (3) in the · instant

WL 879695, at \*1; *Ex parte Griffith*, No. 04–98–00449–CR, 1998 WL 812830 (Tex.App.—San Antonio November 25, 1998, no pet.) (not designated for publication), 1998 WL 812830, at \*1; *Ex parte Abrams*, No. 04–97–01028–CR, 1998 WL 422274 (Tex.App.—San Antonio July 29, 1998, no pet.) (not designated for publication), 1998 WL 422274, at \*1 n. 1; *Ex parte Ozuna*, No. 04–97–00976–CR, 1998 WL 201466 (Tex.App.—San Antonio April 22, 1998, pet. ref'd) (not designated for publication), 1998 WL 201466, at \*2 n. 1; *Ex parte Biddy*, No. 05–98–00070–CR, 1998 WL 191837 (Tex.App.—Dallas March 19, 1998, pet. ref'd) (not designated for publication), 1998 WL 191837, at \*2.

**10.** *Brabson*, 976 at 184 n. 4.

**11.** *Id.* at 201 (McCormick, P.J., concurring to denial of motion for rehearing).

**12.** *Id.* at 200 (McCormick, P.J., concurring to denial of motion for rehearing). This justification, based on a secondary authority, considerably distorted the case law cited within that authority. A close look at the cases cited within Debra E. Wax, Annotation, *Doctrine of Res Judicata or Collateral Estoppel as Barring Relitigation in State Criminal Proceedings of Issues Previously Decided in Administrative Proceedings*, 30 A.L.R. 4th 856 (1984), as well as other cases from around the country, does not support *Brabson*'s "parties theory."

Of the cases supporting the basic concept that litigation by one government agency is binding on other agencies of that same government, several have done so on the very logical basis that the government agencies represent the same party, namely the government. *See, e.g., United States v. Rogers*, 960 F.2d 1501, 1509 (10th Cir.1992) (citation omitted), *cert. denied*, 506 U.S. 1035, 113 S.Ct. 817, 121 L.Ed.2d 689 (1992); *People v. Sims*, 32 Cal.3d 468, 186 Cal.Rptr. 77, 651 P.2d 321, 333 (1982) (citations omitted); *People v. Watt*, 115 Mich.App. 172, 320 N.W.2d 333, 336 (1982) (citation omitted); *Brower v. Killens*, 122 N.C.App. 685, 472 S.E.2d 33, 35 (1996) (citations omitted), *review allowed*, 344 N.C. 435, 476 S.E.2d 112 (1996), *review im-* *providently allowed*, 345 N.C. 625, 481 S.E.2d 86 (1997).

Several others have come to the same conclusion, but based upon a more functional, fact-intensive analysis, taking into account factors such as the specific government agencies involved in the litigation, their relationship to one another, the specific issues litigated, etc. *See, e.g., Briggs v. State, Department of Public Safety*, 732 P.2d 1078 (Alaska 1987) (citations omitted); *People v. Tynan*, 701 P.2d 80, 83–84 (Colo.App.1984); *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 630 (1990) (footnote omitted), *cert. denied*, 497 U.S. 1004, 110 S.Ct. 3238, 111 L.Ed.2d 749 (1990).

Of the cases coming to a different conclusion, several do so based on a fact-intensive analysis (again, considering factors such as the specific government agencies involved in the litigation, their relationship to one another, the specific issues litigated, etc.) that supports the notion that these cases are exceptions to the general rule. *See, e.g., State v. Fritz*, 204 Conn. 156, 527 A.2d 1157, 1166–1167 (1987); *State v. O'Rourke*, 114 N.C.App. 435, 442 S.E.2d 137 (1994); *People v. Trucchio*, 159 Misc.2d 523, 605 N.Y.S.2d 649, 652–653 (1993); *People v. Lalka*, 113 Misc.2d 474, 449 N.Y.S.2d 579, 582–583 (1982).

The remaining cases are as unconvincing as *Brabson*, because they rely on conclusory assertions and circular arguments that the parties are not the same because they are different agencies of the government. *See, e.g., People v. La Motte*, 92 Cal.App.3d 604, 155 Cal.Rptr. 5, 8 (1979), disapproved of in *People v. Sims*, 186 Cal.Rptr. 77, 651 P.2d at 332–333; *State v. Bishop*, 113 N.M. 732, 832 P.2d 793, 795 (1992), *cert. denied*, 113 N.M. 690, 831 P.2d 989 (1992); *Saccoccio v. Lange*, 194 A.D.2d 794, 599 N.Y.S.2d 306, 306 (1993); *Doe by Doe v. City of Mount Vernon*, 156 A.D.2d 329, 548 N.Y.S.2d 282, 283 (1989); *County of Rutherford v. Whitener*, 100 N.C.App. 70, 394 S.E.2d 263, 266 (1990); *Com., Department of Transportation v. Reilly*, 118 Pa.Cmwlth. 608, 545 A.2d 1000, 1002 (1988). In short, of the cases dealing with this issue that are based in logic, reason and analysis, none support *Brabson*'s generalized parties theory.

case, the majority justifies the "parties theory" on the following bases: (a) Judge Womack's reasoning in *Brabson,*[13] a rationale which was explicitly *not* part of the majority opinion in *Brabson,* and which got only two votes in *Brabson,*[14] but which the majority now says "adequately addresses these claims;"[15] (b) precedent;[16] (c) the State is different from private entities;[17] (d) collateral estoppel should apply equally to both sides in a lawsuit.[18]

The sheer volume of "reasons" that have been given to justify *Brabson*'s "parties theory" is itself evidence enough of the illogic of that "theory." To borrow a phrase from Shakespeare, the majority doth protest too much, methinks.[19] Illogic similarly permeates other portions of today's majority opinion, working in conjunction with a fractured structure and writing style to make the opinion virtually incoherent. I briefly note a few of these illogical aspects.

13. *Ante,* at 15–17.

14. *Id.* at 186–188 (Womack, J., concurring, joined by Keller, J.)

15. *Ante,* at 16–17.

16. *Ante,* at 15–16. The majority appears to be attempting to pressure me into voting for its opinion on the basis of precedent, by citing an opinion in which I indicated support for the doctrine of *stare decisis. Id.* at 15–16 (citing *Whitaker v. State,* 977 S.W.2d 595, 602 (Tex. Crim.App.1998) (Price, J., concurring)). However, support for this doctrine does not translate into mindlessly upholding a decision which is so recent and which has no logical basis. *See Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 854, 112 S.Ct. 2791, 2808, 120 L.Ed.2d 674 (1992) (doctrine of *stare decisis* is not an "inexorable command," is not applicable in cases in which a prior judicial ruling should come to be seen so clearly as error that its enforcement is for that very reason doomed, and consideration of whether to apply the doctrine should be given to whether prior decision is subject to a type of reliance that would lend a special hardship to the consequences of overruling and add inequity to the cost of repudiation) (citations omitted).

17. *Ante,* at 17.

18. *Ante,* at 17–18. This statement itself indicates that the majority seriously misunder-

Our decision in *State v. Aguilar,* 947 S.W.2d 257 (Tex.Crim.App.1997), is dismissed as *dicta,* and thus unnecessary to the decision in that case.[20] Yet, *Brabson*'s "parties theory," which the majority today states is binding precedent,[21] was itself *dicta.*[22] Additionally, this Court has previously stated that although a case may be decided on broader grounds than necessary, it is nevertheless binding precedent.[23] The "logic" of this is peculiarly Orwellian: some *dicta* are more equal than others.[24]

Also, today's majority freely cites to both the majority *and* dissenting opinions in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).[25] This is surely trying to have it both ways. The citations to *Ashe*'s majority opinion are particularly puzzling, as the author of today's majority opinion recently argued that *Ashe* is no longer good law.[26] Appar-

stands the basic concept(s) of collateral estoppel. *See Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 329–330, 99 S.Ct. 645, 650–651, 58 L.Ed.2d 552 (1979) (distinguishing between types and applications of doctrine of collateral estoppel).

19. *See* WILLIAM SHAKESPEARE, HAMLET 77 (act 3, sc. 2, l. 228) (Bantam Books 1988).

20. *Ante,* at 16.

21. *Ante,* at 15–16.

22. *See Brabson,* 976 S.W.2d at 184–186 (stating that the Texas Department of Public Safety and the Dallas County District Attorney are not the same parties, but then assuming that they are the same parties, and going on to decide against appellant on other grounds).

23. *See Blanco v. State,* 962 S.W.2d 46, 47 (Tex.Crim.App.1998).

24. *See* GEORGE ORWELL, ANIMAL FARM 133 (Signet Classic 1996).

25. *Ante,* at 17–22.

26. *State v. Sauceda,* 980 S.W.2d 642, 651–652 (Tex.Crim.App.1998) (McCormick, P.J., dissenting).

ently, to the extent that *Ashe* favors the state, it is still good law; to the extent that it favors a defendant, it is no longer good law.[27]

Finally, the majority's rationale for saying that it will not apply its "parties theory" to cases involving issues of federal double jeopardy[28] only underlines the irrationality of the "parties theory." In essence, the approach seems to be: when we can get away with this illogical concept, we will; but, when we think the feds will come in and rap our knuckles, we won't apply it.

Based on reasons I have already given,[29] I cannot support *Brabson*'s "parties theory." This "theory" may have the power of a majority of votes on this Court, but it is utterly devoid of the power of logic and reason. I dissent.

---

**27.** For a similar approach to judicial decision-making, *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997) (in a case in which the trial judge's findings of fact favor the state, the Court defers to those findings); and *State v. Terrazas*, 4 S.W.3d 720 (Tex.Crim. App.1999) (in a case in which the trial judge's findings of fact favor a defendant, the Court does not defer to those findings).

**28.** *Ante,* at 22.

**29.** *Brabson,* 976 S.W.2d at 206–207 (Price, J., dissenting to denial of motion for rehearing).